(Supreme Court, Special Term, New York County. April, 1893.)

1. SPECIFIC PERFORMANCE—CONTINUOUS AND SUCCESSIVE ACTS.

A contract between a railroad company and an express company, which grants to the express company, for a term of years, the exclusive privilege of transporting express matter on the railroad company's passenger train, and which requires the railroad company to at all times furnish a "sufficient" space in its cars, and afford the express company, from time to time, requisite and reasonable facilities, conveniences, rooms, and extra cars and extra trains, and the assistance of employes when necessary, cannot be specifically enforced; the rule being not to decree specific performance of a contract which, by its terms, stipulates for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction.

2. SAME—INJUNCTION.

An injunction in aid of specific performance, being merely ancillary to the main purpose of the action, is dependent on that, and will be denied where the facts alleged in the complaint do not make out a case entitling plaintiff to specific performance.

At chambers. Action by James C. Fargo, as president of the American Express Company, against the New York & New England Railroad Company and Thomas C. Platt, as president of the United States Express Company, for the specific performance of a contract entered into between plaintiff and the railroad company, and for an injunction restraining the breach of such contract pendente lite. On motion for injunction pendente lite. Denied.

Wheeler H. Peckham and Lewis Cass Ledyard, for plaintiff.

Benjamin F. Tracy, Frank H. Platt, and James Armstrong, for defendants.

BARRETT, J. The rule is that an injunction in aid of specific performance, being merely ancillary to the main purpose of the bill, is dependent upon that, and must stand or fall with the bill. High, Inj. (3d Ed.) §§ 1109, 1120. If, therefore, upon the case as made out by the complaint, the plaintiff is not entitled to a specific performance of the contract under consideration, he cannot have an injunction. Allen v. Burke, 2 Md. Ch. 534; Peto v. Railroad Co., 1 Hem. & M. 468; Baldwin v. Society, 9 Sim. 393. This rule is especially stringent where a mandatory injunction is asked. Such injunctions are seldom allowed before a final hearing. They are only granted in extreme cases, and when the right is clearly established. High, Inj. (3d Ed.) § 2, and cases there cited. The question, therefore, is whether a case for specific performance is here made out, and that depends in the first instance upon the nature of the contract sought to be enforced. The general rule is not to decree a specific performance of contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction. Pom. Spec. Perf. Cont. § 312; Fry, Spec. Perf. § 69, citing Blackett v. Bates, L. R. 1 Ch. App. 117, and Powell Duffryn Steam Coal Co. v. Taff Vale Ry. Co., L. R. 9 Ch. App. 331.

Mr. Waterman, in his excellent work on the same subject, puts the rule in this wise: "Equity will not enforce the performance of continuous duties involving personal labor and care of a particular kind which the court cannot superintend." He gives many illustrations of the rule, and cites numerous cases where courts of equity declined jurisdiction to enforce contracts involving continuous and successive acts. Wat. Spec. Perf. pp. 68, 69. This rule should not be confused with the rule under which the making, signing, and delivery of such a contract as the present may, under proper circumstances, be enforced. That requires but a single act, like the renewal of a lease. The specific execution of the contract after it is made and delivered is quite another thing. Let us now examine the present contract, and see whether it comes within the reason of the above rule.

In the first clause the railroad company lets and demises to the express company, for the term of five years, the exclusive right and privilege to control, direct, and transact all the transportation business that may be offered to, or controlled by, either of the parties thereto, over and upon the passenger trains of the railroad company, upon its main line, and upon its branches, extensions, and leaseholds "now under its control, or which it may hereafter control, operate, or lease." In the second clause the railroad company agrees to provide and furnish for the use and benefit of the express company, at all times, upon its passenger trains, a sufficient space in the baggage or other cars hauled upon said trains (and upon the boats of its connecting steamboat line, known as the "Norwich Line") for the proper and immediate transportation of all the matter the express company may desire to forward. Upon its part the express company agrees to utilize the unoccupied space in the baggage or other cars of the railroad company to the greatest extent practicable. Here, at once, we perceive a difficulty with regard to specific performance. The court cannot well make a single and sweeping decree which will execute these provisions. What may be a sufficient space for the proper and immediate transportation of express matter can only be determined when the question arises. The facts will necessarily vary from time to time, and the solution of such questions must depend upon the circumstances as they arise. The same difficulty would attend the enforcement of the correlative obligation of the express company. But, further, it is provided in this second clause that the railroad company will, when necessary, put on additional cars for the use of the express company, sufficient to transport the express goods upon its own lines, but only to such extent as can be taken upon its passenger trains without interfering with the passenger traffic, or causing said trains to be delayed. How can the court decide by a single judgment when it may become necessary in the future to put on additional cars, or how many such cars will be sufficient for the transportation of express matter? And how can it possibly be determined in advance that such cars will not interfere with the railroad company's passenger traffic, or will not cause its trains to be delayed? The impossibility of executing such a contract, once for

all, by a single decree, is quite apparent. Provisions suggestive of similar and still greater difficulties run through the entire contract. Thus, in the third clause the railroad company agrees, if it can make satisfactory arrangements with its connections, to haul over its lines by an all-rail route, each night, upon passenger or other trains satisfactory to the express company, such number of cars (not exceeding three on any one train) as may be necessary for the carriage of express matter between certain specified points; the route by which such all-rail transportation is to be performed to be satisfactory to the express company. To execute this provision would require the railroad company first to secure the express company's approval of trains and route, and then to negotiate with its connections, and make satisfactory arrangements with them regarding such trains and route. It is also provided in this clause that in certain contingencies the railroad company shall run an additional train at a rate of compensation to be fixed and agreed upon from time to time by the parties to the contract. In the fourth clause the railroad company agrees to furnish to the express company, for the prompt and proper care and handling of its express matter, and for the loading and unloading of the same into and from the cars, all requisite, reasonable, and necessary facilities, conveniences, and rooms, at every station and terminal point of the railroad and of the steamboats of the Norwich Line. When the station facilities require a building apart from the station, or a special room in the station, a reasonable rental is to be paid therefor. To enforce this covenant would require the court to determine, from time to time, whether the facilities offered were reasonable, the conveniences and rooms sufficient, and also the reasonable rental of special buildings and rooms. We also find in the same clause a provision that all transfers of express matter to and from the cars, or to and from the stations, shall be performed by men to be provided by the express company, "with the assistance, when necessary, of the employes of the railroad company, to such an extent as such assistance can be rendered without interference with the other duties of the employes of said railroad company." Under this, two questions might come up for decision daily for the next five years: First, whether the services of the employés of the railroad company were necessary to the express company; and, second, whether such services could be rendered without interfering with the other duties of such employes. There is also a covenant that the express company may from time to time employ the railroad company's station agents to act also as their agents. This, however, must be with the consent of the railroad company's general superintendent or the division superintendents. Even this consent is subject to the proviso that such employment "does not interfere with the full and prompt discharge of their duties to the railroad company by said station agents." And the express company agrees to be solely and entirely responsible for all the acts of such station agents, and to pay the railroad company—unless otherwise specifically agreed— for their services as such express agents.

Further illustrations are unneccessary. Suffice it to say that the

contract is exceedingly comprehensive, and that its working details are most minute. These details almost invariably provide for special and varying contingencies, and the elements of discretion and judgment with regard to such contingencies abound. It is apparent that the due execution of such a contract must involve the ascertainment of what it is right and proper that the parties should do from day to day with regard to ever-varying circumstances. A decree for specific performance, couched in the precise terms of the contract itself, would be but the beginning of the judicial work. If, for instance, the court should adjudge that the railroad company at all times furnish a sufficient space in its cars, and afford the express company, from time to time, requisite and reasonable facilities, conveniences, and rooms, and the assistance of employes, when necessary, etc., is it not entirely clear that the question of compliance would involve supplemental judgments, from time to time, upon subsequent and successive issues of fact? And would not the enforcement of the judgment upon these supplemental inquiries call for successive proceedings to punish for contempt? The answer must plainly be in the affirmative. I feel constrained to say that this contract is not only within the rule, and the reason of the rule, but that it is an extreme illustration of the difficulty which would attend an attempt to enforce continuous and successive acts by a judicial decree.

The hardship of leaving the plaintiff to what is possibly an inadequate remedy at law has induced me to examine the authorities, with the hope of finding some precedent in support of this action which would justify the retention of the injunction, but, after an exhaustive search, I have been unable to find any case even approximating to the present in its facts, where there was the least deviation from the general rule. In Blackett v. Bates, supra, a bill was filed for the specific performance of an award which required that the defendant should execute to the plaintiff a lease of the right to such part of a railway made by the plaintiff as was on the defendant's land, and that the defendant should be entitled to run carriages on the whole line on certain terms, and might require the plaintiff to supply engine power, while the latter should have an engine on the road, and that the plaintiff, during the whole time, should keep the entire railroad in good repair. A demurrer to the bill was sustained, Lord Cramworth holding that the defendant could not get what he was entitled to, as his right was not a right to something that could be performed at once, but a right to enforce the performance by the plaintiff of daily duties during the whole term of the lease. The court remarked that it had no means of enforcing the performance of daily duties during the term of the lease; that it could do nothing more than punish the party by imprisonment or fine in case of failure to perform them, and might be called on for a number of years to issue repeated attachments for default. The result was that, as the contract could not be enforced against the plaintiff, it was not enforced in his favor. In Powell Duffryn Steam Coal Co. v. Taff Vale Ry. Co., supra, the headnote reads as follows:

"A railroad having refused to allow the plaintiffs to run engines and carriages over part of their line, under the powers of the railway clauses act, the plaintiffs filed their bill for an injunction to restrain the company from preventing their exercise of the right. *Held* that, inasmuch as the plaintiffs could not run over the lines unless the points and signals of the line were properly worked by the railway company, the court could not grant relief, as it does not order the performance of a continuous act, like working signals, the doing of which requires a continuous attention, and cannot be seen to by the court."

In this case, Lord Justice James remarked:

"It is not the practice of the court to compel, by injunction, either a company or an individual to do a continuous act, which requires the continuous employment of people."

In Baldwin v. Society, 9 Sim. 394, there was an agreement between the plaintiffs and the defendants whereby the plaintiffs, in consideration of certain payments to be made by them to the defendants, were to have the exclusive right of engraving and publishing a series of maps from drawings to be furnished to them from time to time by the defendants. The court refused to restrain the defendants from acting in violation of the agreement, as it could not compel them to furnish the drawings, and therefore could not decree a specific performance of the agreement. In Marble Co. v. Ripley, 10 Wall. 339, the supreme court of the United States held that the specific performance of a contract will not be decreed where the duties to be fulfilled are continuous, and involve the exercise of skill, personal labor, and cultivated judgment. The contract in this case was to deliver marble of certain kinds, and in blocks of a kind. Mr. Justice Strong said that it was manifest that the court could not superintend the execution of a decree for the specific performance of such a contract. In our own state the general subject was discussed in Beck v. Allison, 56 N. Y. 366. The precise point there decided was that equity would not enforce the specific performance of an agreement contained in a lease, upon the part of the lessor, to repair damages caused by fire. The reason given in that case for the denial of specific performance is, however, quite applicable to the present. "It is obvious," said Judge Grover, "that the execution of contracts of this description under the supervision and control of the court would be found very difficult, if not impracticable." The case of Rayner v. Stone, 2 Eden, 128, was cited with approval. In that case a demurrer to a bill for the specific performance of covenants contained in a lease to repair hedges and the mansion house was sustained by Lord Northington. "Among the reasons assigned for the judgment," said Judge Grover, "was that the court had no officer to see to the performance, which the chancellor said was to him very strong. He asks, 'How can a master judge of repairs in husbandry, etc?'" The reasoning in Blanchard v. Railroad Co., 31 Mich. 43, is directly in point. I quote the language of Graves, C. J.:

"Can the court see that in all coming time these requirements are carried out? Can it know, or keep informed, whether trains are running, and what accommodations are suitable to the public interest? Can it see whether the

proper stoppages are made each day? Can it take notice, or legitimately and truly ascertain, from day to day, what amounts to regularity in the re-receipt and discharge of passengers and freight? Can it have the means of deciding at all times whether the due regularity is observed? Can it superintend and supervise the business, and cause the requirements in question to be carried out? If it can, and if it may do this in regard to one station on the road, it may with equal propriety, upon a like showing, do the same with regard to all stations on the road, and not only so, but in regard to all stations of all the present and future roads in the state. That any such jurisdiction is impracticable appears plain, and the fault lies in the circumstance that the objects of the parties, as they were written down by them, are, by their very nature, insusceptible of execution by the court."

The language of the court in Railroad Co. v. Speer, 32 Ga. 550, is equally pertinent. In this case the court observed:

"We are not asked to compel the plaintiffs in error to transport a particular article of freight now being on the platform awaiting transportation. We are asked that they shall, in all future time, transport all freight, and deliver it as required by the defendant in error, in the terms of the contract, * * * The court cannot make a decree which will be satisfied by any specific act of performance. After decree made, the case must be kept open, and, if the defendant in that decree be contumacious, there must be action of the court to enforce it, twenty, perhaps fifty, times a year, for all time."

See, also, Railroad Co. v. Washburn, 25 Ind. 259; Railroad Co. v. Watson, 26 Ind. 50; Danforth v. Railroad Co., 30 N. J. Eq. 12; Wheatley v. Coal Co., L. R. 9 Eq. 538; Abinger v. Ashton, L. R. 17 Eq. 358; Pom. Spec. Perf. Cont. § 312.

The last case in England on this subject will be found in the Times Law Reports for the week ending November 23, 1892, (No. 4, vol. 9, p. 73.) There the lessee of a flat in a London apartment house brought an action for the specific performance of an agreement by the lessor in the lease to appoint a resident porter, who should perform certain services for the tenants. The lords justices dismissed the bill, giving as a reason that the court could not decree specific performance, because it was a contract to be performed during the whole of the tenancy from day to day, and would require constant superintendence, if specific performance were granted.

Upon both principle and authority, therefore, my conclusion is that this action cannot be maintained, and that the injunction must be denied.

There are two other points upon which I feel sufficient doubt to prevent the granting of so extraordinary a remedy as the mandatory injunction which is asked. I refer to the question of damages, and to the question of plaintiff's right, as against the defendant express company, to enter into the contract in question with the railroad. As to the first point, the plaintiff was bound to show the facts justifying its conclusion that it will suffer irreparable injury by the breach of the contract. McHenry v. Jewett, 90 N. Y. 62. It is true that the plaintiff avers that it has contracted for express privileges with connecting railroads, and that the use of express facilities upon defendant's railroad is necessary to it in the transportation of express matter between certain specified points, and destined for other points beyond. The facts, however, with regard to these other contracts, are not fully disclosed, nor

are any facts averred from which irreparable injury can with reasonable certainty be deduced, while all the allegations of irreparable injury are positively denied. There is also an explicit denial that the use of express facilities upon defendant's railroad is necessary to the plaintiff in the transportation of express matter between the points mentioned in the complaint. As to the second point, the contract in question was, according to the contention of the defendant express company, entered into in direct violation of a covenant with it. Whether that covenant is properly susceptible of the construction contended for is not entirely clear. This seems to have been the opinion of Mr. Justice Ingraham in the direct action brought by the defendant express company against the present plaintiff. The covenant was not clear enough to warrant an injunction in favor of the defendant express company prior to the hearing. The position being now reversed, it is fair to conclude that such covenant is not so entirely clear as to warrant an injunction against them prior to the hearing. If I am right, however, upon the main question, then these latter points are secondary, and will not be reached upon the trial of the action. My conclusion is that the motion for an injunction must be denied, and the temporary injunction dissolved, with costs.