[Sac. No. 1028. Department One.—February 29, 1904.]

PERCY P. MOORE, Administrator, etc., Appellant, v. JOHN TUOHY, Respondent.

SPECIFIC PERFORMANCE—REPUDIATION OF CONTRACT—PERSONAL SERVICES UNPERFORMED—DAMAGES FOR BREACH.—An action for specific performance of a contract to convey land will not lie merely because the defendant has failed in an action to rescind it, and has practically repudiated the contract, and refused to allow the plaintiff to perform it, to his damage, where the nature and conditions of the contract are such that plaintiff must perform many acts requiring his personal services before he can demand a conveyance, and such acts and services are unperformed, and performance of them cannot be compelled, and has become impossible. In such case the only remedy of the plaintiff is for damages for breach of the contract.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Hannah & Miller, and Van Ness & Redman, for Appellant.

Bradley & Farnsworth, and G. W. Zartman, for Respondent.

VAN DYKE, J.—This action is to compel the specific performance of a contract. The contract is appended to the com-

plaint and made a part of it. It is quite lengthy, covering over seventeen pages of the printed transcript on appeal, bears date August 12, 1897, and relates to a large tract of land, about two thousand one hundred and forty acres, in Tulare County. Among other things, the agreement recites that on a certain designated portion of the land there is a basin of water which has been excavated about one hundred and twenty-five feet long and seventy feet wide, and that a cut or trench has been excavated for about four hundred feet northerly from said basin, in order to develop water; that Tuohy is desirous that more water be developed by further work in said cut for the irrigation of certain lands, or such as are fit for citrus culture, and Moore agrees to begin within thirty days and finish before August 1, 1898, the work of extending said cut towards Rocky Hill at least fifteen hundred feet from said basin, and to deepen the cut by two hundred feet, and make the cut sixteen feet wide on top and two feet deeper from the surface of the ground than the average depth of the present cut, and, like the present cut, the lowermost portion shall be a channel about thirty inches wide dug out with picks. Moore also agrees that he will put a certain ditch on said lands in good repair, or construct a new one to reach said lands within sixty days from signing the contract, and also agrees to place an engine at the basin with power enough to pump twenty-five feet in height all water required for irrigation, and he further agrees to construct a bridge for wagons across said cut or trench, and either to make an aqueduct to carry the water of a certain creek which crosses the line of said cut, or to make a new channel for said creek to Lewis Creek, on the north side of said basin, the right of way for the new channel to be thirty-five feet in width, and during the six years after the date of the contract Tuohy agrees to sell to Moore on certain named terms such lands as Moore may select, in lots of twenty acres and up, from certain lands lying below the line of the flume or ditch Moore proposes to construct from said basin to said land, and into which he (Moore) agrees that he will pump water to a height equal to twenty-five feet when measured from a plane five feet below the ordinary surface of the water in said basin. The deeds are to be executed on the performance of certain named conditions, the payment of specified amounts of money at different times,

final payment extending over a period of ten years, and, among other things, requiring the payment of taxes and assessments by Moore. It is further provided in case Moore, who proposes to sell to colonists, shall sell any of the land for more than one hundred dollars an acre, Moore agrees to pay Tuohy one third of such excess, and he also agrees that he will plant out at once orange-trees on the greater part of a tract of one hundred acres which he will at once locate and take on the rental plan, and will proceed to extend said cut at once, and within a time fixed to sink at least one well. It is further agreed that if by the work to be done no more water shall be found than sufficient to irrigate the one hundred acres first taken by Moore and the present orchard of Tuohy, Moore has the right to stop further development for water, and is to have the water there now, and what may be developed by extending said cut fifteen hundred feet, on paying Tuohy forty dollars an acre for said one hundred acres and furnishing Tuohy water in a certain way to irrigate his present orchard. Said Moore further agrees that if the water now existing, with that developed by extending the cut fifteen hundred feet, is more than sufficient to irrigate said one hundred acres, then he will, as he finds sale for the lands he has a right to purchase, continue to develop more water by extending said cut, or by sinking wells during the next six years for which he has the right to lease or purchase lands. At the end of six years, if the water exceeds the amount required by Moore, Tuohy may use the same on paying to Moore the proportion of the cost of pumping and maintenance of flume or ditch, or his proportion only of the cost of pumping in a certain event. It is further agreed that when Moore sells land to any colonist that at least one half of such land shall be planted to citrus-trees during the first year after such sale is made, and also that, if extending the cut fifteen hundred feet develops more water than sufficient to irrigate the one hundred acres first taken by Moore and Tuohy's orchard, on the basis of one miner's inch to two and a half acres, said Moore shall take such further amount of land from Tuohy as this additional water will irrigate, and having sold the same as low as one hundred dollars an acre, Moore shall take from Tuohy another twenty acres, or more if he sees fit, and proceed to develop more water from the same by extending the cut, and in this

way shall go on developing water and taking land. Moore·
may desist from extending the cut after extending it fifteen
hundred feet from the basin, and may desist from developing
water generally, with the understanding that in such case
after November 1, 1898, he shall lose his right to purchase or
rent any moie lands from said Tuohy than those he has taken
up till that time, and it is recited that time is of the essence
of the agreement.

It is alleged in the complaint as a reason why the action was
not brought earlier that upon August 19, 1897, and before
default on the part of the plaintiff as to any of the conditions
or provisions of said agreement, and while plaintiff was en-
gaged in carrying out the same on his part, defendant notified
plaintiff that he could not and would not perform any of the
conditions or provisions thereof on his part, and has never
since retracted said notice, but has at all times since failed
and refused to comply with any of said conditions or pro-
visions, and has refused to permit plaintiff, and has not al-
lowed plaintiff to go upon said land for the purpose of
complying with any of the conditions or provisions of said
agreement on his part. It is further alleged in the complaint
that on September 13, 1897, defendant herein commenced in
the superior court of Tulare County an action against the
plaintiff herein for the rescission and annulling of said agree-
ment, and that said action has at all times since been and is
now pending; that a judgment was rendered in favor of the
plaintiff in said action, the defendant herein, by the said
superior court on July 14, 1899, and thereupon the defendant
therein, plaintiff herein, took an appeal to the supreme court,
and thereafter, and upon August 3, 1901, the judgment of the
superior court was reversed and set aside by said supreme
court. That the plaintiff has at all times been and is now
able, willing, and anxious to fully carry out all the terms and
conditions of said agreement on his part, of which defendant
had full knowledge and notice, and but for said action so
instituted by defendant the plaintiff would have promptly
commenced an action against defendant for the specific per-
formance of said agreement. The original complaint united
with the action for specific performance a cause of action for
damages in the sum of twenty thousand dollars, as alleged to
be resulting from defendant's wrongful acts whereby plain-

tiff was prevented from complying with the terms of the agreement in·question. The amended complaint omits the portion of the original complaint in reference to damages, so that the present action, as already stated, is one for specific performance of the agreement in question only. The demurrer to the amended complaint having been sustained and the plaintiff declining to further amend, judgment was entered in favor of defendant, from which judgment plaintiff appeals.

It seems to be the theory on the part of the plaintiff that because the defendant failed in his action to rescind the contract in question, and as he refuses to permit the plaintiff to proceed thereunder, and practically has repudiated the contract, that therefore plaintiff has a right to have said contract specifically performed. This, however, does not follow. One party to a contract may refuse to carry it out, and thereby cause damage to the other party; still the nature of the contract and the conditions may be such that the contract cannot be specifically enforced. "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance." (Civ. Code, sec. 3386.) "If for any cause, even arising after the contract is concluded, it becomes wholly impossible for the plaintiff to perform any part of the contract on his part, he cannot, as a matter of course, enforce a performance against the defendant." (Pomeroy on Specific Performance of Contracts, sec. 337.) It will be seen by the terms of this contract in question that time was a very important element entering into it. It contemplated the reclaiming or preparing of land for the growth of citrus fruit, and the performance of many acts on the part of the plaintiff requiring his personal services. These acts and services have not been performed, and could not, at the beginning of this action, be performed within the time as contemplated and required by the contract. The plaintiff states that the reason he did not enter upon the performance of the contract on his part was that the defendant repudiated the same and refused to carry it out. Nevertheless the defendant is not required to convey

any portion of the land in question until certain acts are performed on the part of the plaintiff in reference to the developing and conducting of water upon certain portions of the land, and otherwise fitting it for the production of citrus fruit. There is no allegation or pretense that the plaintiff had performed any part of the contract on his part at the time of bringing the action in question. In fact, from his very statement of the case, he could not have done so. The defendant, within less than a month, having repudiated the contract, and refused to carry it out on his part, as alleged, may have caused the plaintiff damages, as was stated in the original complaint herein filed, and for which he may have a right of action. But an action for specific performance cannot be maintained unless the plaintiff has performed or can be compelled to perform on his part. An examination of the agreement will show that there are many covenants therein to be performed by both Moore and Tuohy, the doing of which is likely to create disputes and disagreements, and that there are many rights which both Moore and Tuohy are to have upon certain conditions and the happening of certain events, all of which are dependent upon questions of fact in order to determine such rights and the extent thereof, and in order to ascertain whether or not such covenants have been performed.

In *Stanton* v. *Singleton,* 126 Cal. 657, it is said: "A contract expressed in very general terms might not be void for uncertainty, and might be the basis of an action for damages for its breach, while it would be entirely too loose and inexact to warrant a decree for specific performance. . . . A court will not undertake to frame a decree of specific performance where it involves a continuous and long series of acts of supervision, requiring special knowledge and skill and repeated examinations and new directions." In *Fargo* v. *New York etc. R. R. Co.,* 3 Misc. Rep. 205; 23 N. Y. Supp. 360, it is said: "The general rule is not to decree a specific performance of contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction." Pomeroy on Contracts (sec. 159) says: "A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is to be the basis

of an action at law for damages. An action at law is founded
upon mere non-performance by a defendant, and this nega-
tive conclusion can often be established without determining
all the terms of the agreement with exactness. The suit in
equity is wholly an affirmative proceeding. The mere fact of
non-performance is not enough; its object is to procure a per-
formance by the defendant, and this demands a clear, definite,
and precise understanding of all the terms; they must be
exactly ascertained before their performance can be en-
forced.'' Further on the same author (sec. 312), after citing
a multitude of authorities to sustain the text, says: ''Finally,
contracts which by their terms stipulate for a succession of
acts, whose performance cannot be consummated by one trans-
action, but will be continuous and require protracted super-
vision and direction, with the exercise of special knowledge,
skill, or judgment in such oversight—such as agreements to
repair or to build, to construct works, to build or to carry on
railways, mines, quarries, and other analogous undertakings—
are not as a general rule specifically enforced.''

The cases cited and relied upon by appellant do not sus-
tain his position here. In *Hall* v. *Center*, 40 Cal. 63, it appears
that Hall entered into possession under a lease of certain
premises, which lease contained the privilege of purchasing at
one thousand seven hundred and fifty dollars, on or about the
expiration of the term. Hall performed all the conditions on
his part, and during the term ''made valuable improvements
thereon, to wit: of the value of $8,500.'' Before the term
expired he endeavored to avail himself of the privilege of
purchasing the premises reserved to him in the lease, and with
this in view he made a tender of the purchase price in due
time and form, and demanded a conveyance. In that case
there was nothing to be done on the part of the plaintiff other
than the payment of the money agreed upon and which was
tendered. *Ballard* v. *Carr*, 48 Cal. 74, was an agreement to
convey a certain tract of land for professional services of one
Hartman as attorney in procuring a decree of final confirma-
tion of a tract of land, including the portion to be conveyed.
The defense was, that, in the absence of Hartman, Carr em-
ployed Patterson on a motion before the district court, but the
court says in its opinion: ''He continued thereafter to recog-
nize Hartman as his attorney, and availed himself of his

services. This must be regarded as a waiver of full perform-
ance of the contract on the part of Hartman.'' But the court
adds that the plaintiff—assignee of Hartman—"having ap-
pealed to a court of equity to enforce the performance of the
contract on the part of the defendant, must himself do
equity, and must submit to such terms as a court of equity
would impose. Compensation must be allowed to the defend-
ant, for the services of Patterson, and it must be made an
equitable lien in favor of the defendant, upon the land to
which the plaintiff is entitled under the contract. The amount
of the compensation is the value of the services rendered by
Patterson. The defendant will be permitted to amend his
answer, if he so elects, on the return of the cause.'' In that
case it will be seen the services were fully performed, al-
though partly by another attorney. In *Calanchini* v. *Brans-*
*tetter,* 84 Cal. 249, it is simply held that a contract for the sale
of real estate at the option of the vendee only, upon his elec-
tion and notice and tender of the sum agreed to be paid, may
be specifically enforced; and the refusal of the vendor to
accept the purchase money will not destroy the mutuality,
though the vendee upon such refusal could thereupon with-
draw his election. The case at bar is altogether different from
those relied upon by the appellant, and they furnish no au-
thority in support of the present action.

The amended complaint failed to state a cause of action for
a specific performance, and the demurrer to the same was
properly sustained.

Judgment affirmed.

Shaw, J., and Angellotti, J., concurred.