SAN JUAN RACING & SPORTING CLUB ET AL., PETITIONERS, *v.*
FOOTE, DISTRICT JUDGE, RESPONDENT.

PETITION for a Writ of Certiorari to the First District Court
of San Juan, Hon. Charles E. Foote, Judge.

No. 363.—Decided November 9, 1922.

INJUNCTION—CONTRACT—BREACH OF CONTRACT—SPECIFIC PERFORMANCE.—As an
injunction to prevent the breach of a contract generally has the effect of
a decree for its specific performance and in that case the injunction is of
a mandatory nature, the said remedy does not lie to prevent the breach of
a contract where performance could not be specifically exacted, particularly
when the contract is unilateral and its specific performance could not be
demanded by the obligor, or when the contract implies a series of acts which
can not be performed in one transaction, but on the contrary, requires a
series of transactions and prolonged inspection.

ID.—CORPORATIONS—HIPPODROME—RESTRAINT.—Only the state can petition a
court to restrain the *ultra vires* acts of a public corporation, but in the case
of a private corporation not only the state but the stockholders may do so
within certain limitations; and when the corporation is engaged in main-
taining and operating a hippodrome, the courts will not generally interfere
with the resolutions adopted by its board of directors concerning the in-
terior order of the hippodrome.

ID.—APPEAL—CERTIORARI.—The general rule that when the ordinary remedy by
appeal may be resorted to a writ of certiorari does not lie, is not absolute,
for if the appeal is not as adequate, speedy and effective as certiorari, the
writ may be granted even after an appeal has been taken.

The facts are stated in the opinion.

*Mr. L. Feliú* for the petitioners.

*Mr. R. Rivera Zayas* for the adverse party.

MR. JUSTICE FRANCO SOTO delivered the opinion of the
court.

Jesús Mediavilla and Francisco Mesa brought an action
in the First District Court of San Juan for the annulment
of certain resolutions adopted by the petitioning corpora-
tion suspending for six months the privilege of Mediavilla
to enter his horses for the races on the race-track of the
petitioner, forbidding the registration of the mare "Dotty"
and permanently expelling jockey Francisco Mesa from the
race-track. As an auxiliary remedy the plaintiffs petitioned
in the same complaint for a writ of injunction *pendente
lite* restraining the petitioner from enforcing the said

resolutions, ordering the registration of Mediavilla's horses, of the mare "Dotty" and of jockey Francisco Mesa for the races to be run on the petitioner's race-track during the pendency of the action for the annulment of the said resolutions.

On May 11, 1922, the lower court granted the preliminary injunction in the following terms:

"Therefore, in accordance with the Injunctions Act, and a bond for $10,000 having been given by the plaintiffs and approved by this court, I issue the present preliminary writ of injunction against the defendants, the San Juan Racing & Sporting Club and its entry clerk, ordering them that without any excuse whatever they refrain, personally or by their agents or employees, from enforcing the resolutions to which this writ refers; and they are ordered to permit and make the entry of the horses belonging to Mediavilla, or managed by him, for the races to be run on Sunday next and those that may be run until this action is finally decided; and that they likewise permit the entry and employment of Francisco Mesa as the plaintiff's jockey for the said races and until this action is finally decided: admonishing them that disobedience of this writ will be punished as contempt by this court. The said entries are understood to be subject to the law and regulations in force.—Given under my signature and the seal of this Court this 11th day of May, 1922.—San Juan, Porto Rico.—Charles E. Foote, Judge of the First District Court of San Juan.—Attest: C. Marrero, Clerk."

After making the foregoing order the same court, on May 26, 1922, made another order directed to the petitioning corporation and ruling its directors to appear before the court to show cause why they should not be punished for contempt or disobedience of the said preliminary writ of injunction, the contempt consisting in the fact that the petitioner had refused to register some of the horses of plaintiff Mediavilla and had refused to permit the entry of jockey Francisco Mesa for the races to be run on May 28, 1922.

For a review of these proceedings the petitioning corporation applied for the present writ of certiorari, praying this court to set aside the preliminary writ of injunction and also

the rule to show cause, of the 11th and 26th of May, 1922, respectively.

The fundamental ground set up in the petition is that in granting the preliminary injunction the lower court acted in excess of its jurisdiction and without power or authority therefor, in violation of the law and regulations governing procedure in civil actions: and, furthermore, several other legal reasons are adduced which we shall discuss hereafter in this opinion.

It is elementary that in certiorari proceedings this court can consider only those questions which relate to the lack of jurisdiction of the lower court or to the violation of the rules of procedure that govern in civil cases. Consequently we can decide nothing now relative to the merits of the case or in connection with the fundamental questions or findings of fact. Hence, in order to determine definitely whether there was lack of jurisdiction or whether the court exceeded its power in granting the preliminary injunction, we must analyze the complaint in the principal action and ascertain the ground on which the court relied for exercising its jurisdiction.

For this purpose it is important to reproduce in synopsis the following allegations of the said complaint: That plaintiff Mediavilla is the owner of horses which he has registered with the Insular Racing Commission, he having paid also all licenses and other fees exacted by law and by the regulations; that having obtained the licenses and paid the fees required by law and the regulations, he acquired the right to enter and run his horses on the race-track maintained and operated by the petitioning corporation, subject, however, to the conditions imposed by law and the regulations; that Mediavilla has invested a capital of $20,000 in horses and stables; that his horses are special race horses and can not be used profitably for any other purpose, and that without authority to do so the petitioning corporation has adopted the resolution suspending for six months his right to register and run

horses on the said race-track and threatens to enforce that resolution, thus causing the plaintiff irreparable damages; that Francisco Mesa, another plaintiff, is a jockey duly authorized by law and the regulations to ride Mediavilla's horses and without him Mediavilla could not run them; that by a resolution the petitioning corporation also expelled the said jockey from the race-track; that if this resolution should be enforced while the action is pending, the plaintiffs would suffer irreparable damages; that the said resolutions were adopted without hearing the plaintiffs who have complied strictly with all of the laws and regulations which govern the races on the said race-track and have committed no violation of them such as to justify forfeiture of their right to participate in the races that may be scheduled.

We can not enlarge the circle in which these allegations revolve, and, considering them alone, the question is as to what are the facts stated; not to discover whether or not there is a cause of action, but to give the lower court authority to hear and determine the matter in controversy; that is, the jurisdiction of the said court, and, therefore, its power to issue the preliminary writ of injunction.

The plaintiffs argue in their brief that their complaint does not set up the existence of any contract and that it is based on the universally accepted principle that every person who may suffer irreparable damages by reason of an *ultra vires* act of a corporation has the right to an injunction to restrain the corporation from consummating the act which it is attempting to commit without authority.

We believe that there is confusion in the manner in which the plaintiffs consider the situation of the case.

We should not lose sight of the fact that the controversy rests on a preliminary remedy as an auxiliary measure of a principal action; and in this action must be sought the matter for defining the jurisdiction of the lower court. Contractual relations must arise always from the law itself

or from the will of the parties, which is the law of the contract. We are not going to clarify the discussion of the name or nature of a contract; but its existence or the juridical connection which in one way or another the plaintiffs seek to establish with the petitioning corporation in demanding of it the performance of a specific obligation. This obligation is interpreted in the complaint as the right alleged by the plaintiffs to run their horses on the track of the defendant as owner and jockey. These are rights which the plaintiffs believe to be actionable, without alleging their duties towards the petitioner, and that is the form in which the contractual relation between the parties is set forth. Therefore, when it is further alleged that the petitioning corporation adopted resolutions attempting to suspend for six months plaintiff Mediavilla's license to run his horses on the track maintained and operated by the petitioner and to expel his jockey, nothing more is alleged than that a contract was broken by the petitioner and the injunction *pendente lite* granted has no other purpose than to operate as a decree for its specific performance.

"An injunction to restrain a breach of a contract often operates to all intents and purposes as a decree for its specific performance." 1 Beach on Injunctions, 444.

Section 4 of the Injunctions Act of March 8, 1906, reads as follows:

"Section 4.—An injunction can not be granted:

    *        *        *        *        *        *        *

"4. To prevent the breach of a contract, the performance of which would not be specifically enforced." .

"And this rule that an injunction in aid of specific performance will be denied where the facts alleged in the complaint do not make out a case entitling plaintiff to specific performance, is especially stringent when a mandatory injunction is asked, as such an injunction is seldom allowed before final hearing." 1 Beach on Injunctions, 444.

That comment 'reflects a situation perfectly similar to the one under consideration. That is the rule that applies to this case. The nature of an injunction granted might be. open to question, but it is mandatory in its effects. The plaintiffs tacitly admitted the rule cited when in a collateral manner they attempted to secure the performance of an obli-gation by the petitioning corporation by basing their posi-tion on resolutions alleged to be *ultra vires,* while the rem-edy would operate to prevent a breach of a specific obliga-tion. Therefore, the complaint sets up contractual relations, from which, however, mutual obligations between the parties do not appear. The plaintiffs claim a unilateral right. It partakes of the nature of an option when they allege that the obligation of the petitioner (to admit the horses and jockey of plaintiff Mediavilla) depends upon their registration and the payment of a license fee to the Insular Racing Com-mission, without alleging the reciprocal duties of the said plaintiffs.

"An injunction will not be granted in aid of an action for specific performance of a contract which is unilateral, and therefore will not be decreed to be specifically performed, as where the de-fendant has a mere option to purchase but is under no obligation to purchase." 1 Beach on Injunctions, 449.

In *Wood* v. *Dickey,* 17 S. E. Rep. 818, the court said:

"A court of equity in Virginia will not decree specific execution of a contract when there is not mutuality in both obligation and remedy. Both parties must, by the agreement itself, have a right to compel a specific performance of it, else equity will not execute it.

"In Duvall v. Myers, 2 Md. Ch. 401, it is said by the court that a right to specific performance of a contract, so far as the mutuality is concerned, depends upon whether the agreement itself is obligatory upon both parties; so that upon the application of either against the other the court would coerce a specific performance. Rider v. Gray, 69 Am. Dec. 135; Marble Co. v. Ripley, 10 Wall. 359."

Besides, the matter involved in this controversy is repre-

sented by a series of successive acts which imply a solution of continuity.  The track of the petitioner is not maintained for the purpose of a single race, but continued and successive horse-races are run thereon; therefore, Mediavilla's right to run his horses and to enter his jockey is not limited to a single race nor extinguished by a single transaction, as appears from the complaint; but comprises a series of them which would require prolonged vigilance on the part of the petitioner.  This being another aspect of the case, the American decisions have already held that a juridical situation of such a nature is not subject to injunction and the breach of a similar obligation can not be prevented by injunction.

In Beach on Injunctions, Volume 1, page 445, it is said:

"The general rule is not to decree a specific performance of contracts which by their terms stipulate for a succession of acts whose performance can not be consummated by one transaction, but will be continuous and require protracted supervision.  Fry, Spec. Perf., sec. 69; Waterman, Spec. Perf. pp. 68, 69; Blackett v. Bates, L. R. 1 Ch. App. 117; Powell Duffryn Coal Co. v. Taffvale R. Co., L. R. 9 Ch. App. 331; Blanchard v. Railroad Co., 31 Mich. 43; Atlanta etc. R. Co. v. Speer, 32 Ga. 550; Danforth v. Philadelphia etc. R. Co., 30 N. J. Eq. 12."

In relation to the doctrine cited, no case is more analogous to this case than that of a railroad corporation which agrees to furnish an express company from time to time with conveniences, cars, extra trains and assistance to its employees when necessary.  In the case of *Fargo* v. *New York etc. R. Co.*, 23 N. Y. Supp. 360, the court said:

"Therefore an injunction will not be granted to prevent the breach of a contract by which a railroad company agreed to furnish an express company, from time to time, requisite conveniences and rooms, and cars and extra trains and assistance of employees when necessary."

The doctrine laid down in the case of *Age Publishing Co.*

v. *Western Union Tel. Co.*, 83 Ala. 498, is also similar. It was held:

"An injunction will not lie against the breach of a contract by the Associated Press to give the exclusive right of publishing their dispatches, for an indefinite period, at a certain place, to a publishing company, in return for the latter's services as their correspondent and agent, since the contract could not be specifically enforced against complainant."

The jurisprudence of this court has already affirmed the rule of lack of jurisdiction or authority in a court when the object is to prevent the breach of a contract whose performance could not be specifically enforced, in so construing subdivision 4 of section 4 of the Injunctions Act cited. We refer to the case of *Núñez v. Soto Nussa, District Judge*, 14 P. R. R. 190.

The able attorney for the plaintiffs agrees and admits that in the *Núñez Case* the contract whose breach was sought to be prevented by an injunction could not be specifically enforced and that it was clear and evident that under the Injunctions Act the district court was without authority and jurisdiction to grant an injunction of that nature; but he alleges at the same time that the present case is entirely different, inasmuch as the complaint is based on the universally accepted principle that every person who suffers irreparable injury by the *ultra vires* acts of a corporation is entitled to an injunction to prevent the corporation from further proceeding in the acts which it intends to commit without authority. The principle so generally invoked does not apply to cases of this kind, and the scope and effect of the rule cited, as well as the error of the plaintiffs in applying it to this case, may be readily seen from the following language:

"According to the prevailing view a court of equity at the instance of the state, through a proper officer, may restrain a public or private corporation from either abusing the powers granted to it or attempt-

ing to exercise powers not granted, and it seems that such relief may be granted at the suit of a stockholder of a private corporation, but not at the suit of a stranger, nor will it be allowed in favor of a stockholder where the. effect must be to suspend the corporate business and make its conduct in the ordinary methods impossible. The rule as to enjoining irreparable injuries only has no application to. corporate acts, entirely without authority, for which there is no adequate remedy at law, and corporations will be restrained by injunction from proceeding without authority to the injury of others, as, for instance, where an attempt is made by a railroad corporation to construct its line over the property of an individual without the proper authority. In such cases the question is not merely one of damage but rather one of the invasion of a right." 14 R. C. L. 368, 369.

It may be observed that nothing is alleged in the complaint which may be in accordance with the principles developed in the doctrine just transcribed. Therefore, the plaintiffs have no power to ask for the annulment or to question the validity of the resolutions adopted by the petitioning corporation inasmuch as they are strangers to the said corporation; and that being so, in this particular case only The People of Porto Rico, or the stockholders of the corporation, as the case may be, would be the parties lawfully entitled to attack the legality of such resolutions when they are thought to be abusive or *ultra vires;* and the action of the former could bring about, if necessary, even the cancelation of the franchise of the petitioner, as well as that of any other corporation which should abuse its authority. The plaintiffs could not supplant, therefore, the action of The People of Porto Rico or of the stockholders by attacking the resolutions adopted by the petitioner, nor can their contractual relations put in their hands such a remedy as injunction; for, besides the reasons already stated, whatever may be the interpretation given to such relations, it is a prevailing principle in connection with associations engaged in this or similar sports in the United States that horse owners and their jockeys are subject to the resolutions

adopted by the boards of directors of said associations, and generally the courts will not interfere against these resolutions. Otherwise these corporations would be without the necessary moral authority and power to correct offences and misdoings committed by the horse owners and their jockeys; and this situation, based on a negative power of such a nature in which is involved the sound morals of a sport and which affects the public welfare generally, would be against the police and moral power and in such circumstances an essentially equitable remedy as that of injunction should never be granted.

The appeal alleged in the petition to have been taken from the preliminary order for an injunction would seem to be an obstacle to the consideration of the petition in certiorari. Yet, the general rule that when the ordinary remedy by appeal is available a writ of certiorari does not lie, is not so absolute. In the case of *Núñez* v. *Soto Nussa, supra,* that question was thoroughly discussed and it was held that in that particular case the appeal was not a bar to certiorari proceedings. In that case the rule laid down by the Supreme Court of Missouri was cited as follows:

"A remedy by appeal or writ of error is not sufficient to bar a certiorari, unless, it is adequate to meet the necessities of the case; that is to say, equally beneficial, speedy and sufficient; not merely a remedy which at some time in the future will bring about a reversal of the judgment complained of, but a remedy which will promptly relieve the petitioner from the injurious effect of that judgment and the acts of the inferior court or tribunal."

This case comes under the said rule, because the court below having acted in excess of its jurisdiction in granting the preliminary injunction and the petitioner being threatened with contempt proceedings, an appeal would be a tardy remedy which would not be as adequate, speedy and effective as certiorari to relieve the petitioner, in furtherance of justice, from the acts of the lower court.

For the foregoing reasons the order granting a preliminary injunction of May 11, 1922, and the rule to show cause of May 26, 1922, should be reversed.

*Order set aside.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.