## Mattie V. Hill v. Josephine Hill.

1. INSURANCE—*what essential to exclusion of vested right by beneficiary.* A beneficiary acquires a vested right in insurance which equity will protect if such beneficiary assists in paying the assessments or premiums under an agreement by which the proceeds of the insurance or a part of them are to be paid to such beneficiary.

2. INSURANCE—*when beneficiary loses vested rights in.* A beneficiary who has assisted in the keeping up of insurance under an agreement by which the proceeds thereof or a part of them are to be paid to her, loses such rights where she abandons such agreement and fails to perform her undertakings.

Hill v. Hill.

Bill in chancery. Appeal from the Circuit Court of Christian county; the Hon. SAMUEL L. DWIGHT. Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded. Opinion filed November 27, 1906.

J. C. & W. B. McBRIDE, for appellant.

HOGAN & WALLACE, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

Appellee filed a bill in chancery against appellant, which alleges in substance, that a benefit certificate was theretofore issued to one W. S. Hill, the husband of the complainant, by the Court of Honor, a fraternal beneficiary society of which he was a member, for the sum of $2,000; that complainant was designated in said certificate as the beneficiary; that said Hill paid all dues and assessments required to be paid thereon until the month of August, 1904, at which time he permitted said certificate to lapse and was suspended from membership in said society; that he then agreed with complainant that if she would furnish the money necessary to reinstate him in the society, and then and thereafter pay all dues and assessments necessary to revive said certificate and keep the same in force, he would relinquish all interest therein, and all authority to control the beneficiary; that acting upon said agreement, complainant did furnish the money required and said Hill was reinstated and said certificate became again in force; that thereafter, with occasional assistance from said Hill, complainant paid the dues and assessments upon the certificate until his death; that by reason thereof, she acquired a vested interest in the same and said Hill became estopped from making any other person as beneficiary thereunder. That shortly before his death, in violation of the rights of complainant, said Hill surrendered the certificate to said society and procured another to be issued in its stead in which his sister, Mattie V. Hill, who had

knowledge of the rights of complainant in the premises, was named as beneficiary. That upon the death of said Hill, the said Mattie V. Hill, surrendered such new certificate to the society and as beneficiary thereunder was paid the sum of $1,000, but that she received the same for complainant, who was, in equity, entitled thereto. The bill prays that a decree be entered requiring Mattie V. Hill, who is made defendant thereto, to pay said sum so received by her to complainant. The answer to said bill denies, *inter alia,* that the complainant paid the dues and assessments upon said certificate until the time of the death of said Hill and avers that she failed to do so, but that on the contrary, under an agreement between Hill and the defendant, entered into about four months prior to his death, she, the defendant, thereafter paid the same; that pursuant to such agreement, and at the time of making the same, the said Hill surrendered the certificate and procured another to be issued in which the defendant was named as beneficiary, and that thereafter the complainant never claimed any interest in the same. The answer admits that the defendant received from the Court of Honor the sum of $900, the whole amount due under the terms of the same.

Upon replication being filed to said answer, the chancellor heard evidence in open court upon the issues joined, and rendered a decree against the defendant for the sum of $900, to reverse which decree this appeal is prosecuted by the defendant.

It is urged by appellant that the chancellor erred in finding the equities to be with the complainant, and in not dismissing the bill for want of equity.

The evidence discloses that the assessments upon the certificate in question were paid by the assured from the date of its issuance until August, 1904, at about which time he and appellee ceased living together and divided their property, he going west; that under an arrangement made about this time, sub-

stantially as alleged in the bill, the certificate was delivered to appellee by her husband and that with his assistance she thereafter paid all assessments up to and including the month of February, 1905. That the assessment for March was not paid by any one and that April 1, 1905, the assured was suspended from membership and his certificate declared forfeited for nonpayment of the March assessments. That about May 13, 1905, the assured and appellant entered into an agreement, substantially as alleged in her answer, and that pursuant thereto appellant paid the money for his reinstatement and thereafter paid all assessments until the death of the assured, by suicide, in July, 1905. The evidence further shows that after February 1905, appellee made no effort to pay the assessments, but that she relied, as she states, upon his statement to her that he would pay and had paid the same. That about June 1, 1905, appellee filed a bill for divorce against her husband, at about which time, as she testified, he asked her for the policy which she delivered to him, without her asking or his volunteering any explanation as to why he wanted it. She also testified that she did not learn until after her husband's death that a new certificate had been issued. The evidence further shows that the assured thereafter surrendered the certificate to the society, and that on June 14, 1905, another was issued in its stead, bearing the name of appellant as beneficiary. The local recorder of the Court of Honor testified that on December 20, 1904, appellee inquired of him as to a raise in the assessments which had been ordered by the society, and that upon his informing her that said assessment had been increased from 85 cents to $1.44, she remarked that she did not know whether she would pay it or not, but that if she decided to "keep it up" she would send the money in due time; and that thereafter witness never heard from her again nor was any money paid to him by her. R. C. McCauley testified that he had a conversation with

appellee shortly after her husband's death, in which she stated that she did not know how many policies her husband had kept up; that she did not have any money to keep them in force and was afraid he had not done ·so. Albert Hill testified that he was present and heard the foregoing conversation, and that appellee further stated therein that she feared' her husband had. no insurance because the last she knew "he was behind" and that "it looked like a shame that she carried the policies in the Woodmen' and Court of Honor until she could carry them no longer and had to drop them." Mrs. Albert Hill testified that after the funeral appellee was asked in the presence of witness, of what lodges her husband was a member, and she replied· that she did not know whether he was a member in good standing or not; that she had carried the policies in the Woodmen and Court of Honor until she could do so no longer and she had to drop them. Appellee does not in her testimony deny that she made the foregoing statements.

Counsel for the respective parties at bar join issue in argument upon the question as to whether or not, where the beneficiary under a certificate of the kind and character here involved, under an agreement with the member, pays, or assists in paying, the assessments, said beneficiary acquires such a vested right or interest in the certificate as to prevent the member from effectually changing the beneficiary. We think the true rule applicable in such case, may be gathered in the language of the court in Royal Arcanum v. Tracy, 169 Ill. 28, where it is said: "It may be stated that in the absence of a contract existing between the member and the beneficiary named in the certificate, as a general rule the beneficiary, before the death of the member, has no vested interest in the certificate. But the case made by appellee, as we understand the record, stands upon different ground. While a certificate like the one in question is not assignable at law, the beneficial interest therein may be transferred

in equity. Equitable rights may be acquired in a beneficiary certificate which may be enforced in a court of equity; * * * after this agreement was made, as between Tracy and his wife, he had no right to surrender the certificate and have the organization make out a new one payable to another party, and his attempt to do so * * * was a fraud upon his wife.''

This view of the law is quoted with approval, and followed, in McGrew v. McGrew, 190 Ill. 604. It will be seen from the language quoted that in cases like that cited, and the one at bar, the rights of the original beneficiary are equitable only. Such rights are undoubtedly predicated upon and arise from the fact that such original beneficiary has in good faith and under an express and valid agreement with the member, expended money to keep effective that which otherwise would be forfeited and lost to all, and that in such case it would be contrary to equity and good conscience to permit him or her to be deprived of the benefit and advantage of the same, as against either the member who has paid nothing or one who has voluntarily assumed, during the life of the certificate, to keep the same in force. In view of the foregoing and other authorities cited by counsel, it is manifest that as between the beneficiary and the member, or as between the beneficiary and a volunteer, the equities of the beneficiary are superior and should and would be enforced in a court of equity. We are of opinion, however, that under the facts in the case at bar, appellant, as well as appellee, had equitable rights, and that the same should be enforced as superior to those of appellee. The fact that appellee failed to keep up the assessments as she had agreed to do, and permitted the certificate to lapse, and thereafter made no effort to have the membership of her husband restored so as to render the certificate again effective, when considered in connection with her statements made after her husband's death, convince us that at the time she delivered the certificate to her husband, she abandoned all

claims thereon. The further fact that prior to such surrender of the certificate, she had brought suit for a divorce against her husband, seems corroborative of this view. Having thus abandoned any right she may have theretofore had, whether vested or otherwise, we are of opinion that to hold that appellee is entitled to the proceeds of the certificate, in preference to appellant, who at a time when the certificate had lapsed, furnished the funds to restore it to life and keep it alive, would be grossly · inequitable and abhorrent to good conscience.

In the Tracy case, *supra,* relied upon by appellee, the facts involved were materially dissimilar to those at bar. In that case the first beneficiary not only loaned money to the assured upon the security of the certificate but she fully performed her agreement and paid all assessments thereafter until the death of the assured. Furthermore, the issuance of the second certificate was procured by fraud and perjury, and there were no possible equities existing in favor of the second beneficiaries who paid or advanced nothing to keep the insurance in force. In the present case no fraud or perjury or deception was practiced to obtain possession of the first certificate. It was surrendered by appellee without inquiry or explanation, either at the time or thereafter, and no subsequent payments were made by her on account of the same.

Appellant, on the contrary, fully performed the agreement under which the certificate was made payable to her, and thereby acquired a special interest therein, which a court of equity should protect. We are therefore of opinion that the chancellor erred in not dismissing the bill for want of equity.

The decree will be reversed and remanded.

*Reversed and remanded.*