FISCHER v. FISCHER.

(*Knoxville*. October 30, 1897.)

LIFE INSURANCE. *Rights of beneficiary under benefit certificate.*

The beneficiary named in a benefit certificate has no vested interest or right therein, notwithstanding his payment of assessments or incurring of expenses on the faith of such certificate, that will prevent the insured from changing the beneficiary, where the constitution of the society provides that a member may change the beneficiary at any time.

Cases cited: Quinn v. Knights of Honor, *ante*, p. 80; Sofge v. Knights of Honor, 98 Tenn., 446; Catholic Knights v. Kuhn, 91 Tenn., 214; Handwerker v. Diermeyer, 96 Tenn., 619; Life Association v. Winn, 96 Tenn., 224.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

COMFORT & SPILLMAN for Complainant.

C. H. BROWN, J. C. J. WILLIAMS, and D. W. KUHN for Defendant.

WILKES, J. This is a contest between a brother and sister over the proceeds of a benefit certificate in the order of Knights of Honor upon the life of their father.

The father, William Fischer, had been a member of the order for quite a number of years and carrying insurance in it upon his life. The original certificate was for $2,000, and was payable to his wife. She died in 1889, and the certificate, in May, 1895, was surrendered and a second certificate was issued instead, for a like amount, but payable, $800 to John A. Fischer, $800 to Harriet B. Fischer, and the remaining $400 to three other children. On December 23, 1895, this second certificate was surrendered to the lodge and in its stead a third certificate issued for the same aggregate amount, payable, $200 to John A. Fischer, $1,400 to Harriet B. Fischer, and the remaining $400 to the three children, as, provided in the previous certificates. On January 8, 1896, the father died.

On February 4, 1896, the complainant, John A. Fischer, filed this bill against his sister, Harriet, and the Supreme Lodge Knights of Honor, to compel the payment of the. $2,000 into Court, and its apportionment according to the second certificate, so as to give him $800 of the fund, as provided by that certificate. The Chancellor · granted the relief prayed, and directed that the daughter be refunded one-half the amounts she had paid out in nursing and caring for her father, in his last illness, in his burial expenses, and for a lot in the cemetery, and divided the costs. The defendant by appeal and the complainant by writ of error brought the case to this Court and it has been heard by the Court of

Chancery Appeals. That Court reversed the holding of the Chancellor, and directed the fund to be paid out as provided by the last certificate, that the son be not required to repay to his sister anything on account of nursing, expenses of last sickness after his removal to the hospital, or burial of the father, and directed that defendant, Harriet, pay one-half the costs in the Court below, and the complainant the other half, and all the costs of the appeal, and remanded the cause to the Court below, for the execution of the decree. The complainant, John A. Fischer, appealed to this Court, and has assigned errors. The Supreme Lodge, Knights of Honor, has been permitted to pay the fund into Court, and has no further interest in the controversy.

The questions presented for the consideration of this Court by the assignment of errors are (1) whether the parties to whom the second certificate was issued, were thereby clothed with a vested right, which the member could not afterward change or defeat without the consent of the beneficiaries in the certificate; (2) whether the complainant, John A. Fischer, if he had a vested right under the second certificate, forfeited his rights thereunder by abandoning or failing to comply with certain agreements made by him as to the maintenance of his father, which formed the consideration for the provisions in his favor in that certificate.

The facts, so far as necessary to be stated, are that the second certificate was issued upon an agree-

ment entered into between the father, son, and daughter, that the brother would furnish the father with a home and maintenance, and pay half his dues to the order, and the daughter would pay the other half of dues, and furnish him all necessary clothing, and they would each, in consideration therefor, have eight hundred dollars of the proceeds of the insurance.

The Court of Chancery Appeals find that, in accordance with this mutual agreement, the father did live with the son for several months. He was then stricken with partial paralysis, and, after about two months, was removed to a hospital, where he became helpless and required much care and constant attention. The son was a poor man, working for daily wages, and his wife was out at service for a great part of the time, so that proper care and attention could not be given at the son's house. That Court finds that the son was willing to do all he could, but recognized the fact that his circumstances were such as to prevent him from giving the constant attention and care required. By mutual consent, and on the advice of friends, he was taken to a hospital where he could be better cared for.

Up to this time the agreement had been carried out, so far as practicable, by the son and daughter, the latter contributing something more than the son toward the payment of assessments. The Court of Chancery Appeals conclude, that when the son agreed to the removal of his father to the hospital to be

kept and cared for, he abandoned his agreement to furnish him a home and maintenance, and thereby surrendered all contractual rights in the certificate, if he had any, and that the father had the right to change the beneficiaries, surrender the certificate, and take out a new one, and that the son had no vested right or interest in the proceeds of the second certificate that could defeat this right. The Court of Chancery Appeals find that when the father took out the third or last certificate he was mentally capable of transacting such business, and did understand what he was doing, and the nature and effect of his act; that he made the change in certificates of his own volition, and his daughter was guilty of no fraud in relation thereto. The son did not know of the change in certificate until after it was accomplished, but before the death of the father, but there does not appear to have been any intentional concealment from him or bad faith towards him in the matter.

The first question presented is whether the son had any vested interest or right in the proceeds of the insurance upon the life of the father which would prevent the father from canceling the second and taking out the last certificate, thus changing the son's beneficial interest in the proceeds. Under the constitution and general laws of the Knights of Honor, article 9, section 4, it is provided that "a member desiring to change his beneficiary may, at any time while in good standing, surrender to his

lodge his benefit certificate, which shall be sent to the supreme reporter, etc. And he shall thereupon cancel the old certificate and issue a new one in lieu thereof to such member, payable as he shall have directed, within the limitations prescribed by the laws of the order; said surrender and direction to be made on the back of the benefit certificate, surrendered, signed by the member, and attested by the reporter under the seal of the lodge.'' The provisions of this section were strictly followed in surrendering the second and issuing the third, or last, certificate.

It is held in a number of cases, principally in New York and California, following the New York cases, that the beneficiary who pays assessments does acquire an interest which cannot be divested without his consent, when there is a special agreement to that effect, or that no substitution shall be made. See the cases cited in 3 Am. & Eng. Enc. L. (2d Ed.); 993, and note 4. But these cases are not in accord with the current weight of authority. Same, p. 990, and notes. The rule approved in the majority of cases is based upon the provisions and reservations contained in the charter and by-laws of the society, and this furnishes the distinction between ordinary life and mutual benefit insurance policies. Same, p. 991. This rule, adopted in the majority of cases, is in accord with the objects and purposes of beneficial orders, in which the benevolent feature prevails largely.

Fischer *v.* Fischer.

It is the policy of the law to discourage agreements by which a certificate in such order may be transferred to a third person, and be held and used by him as a speculation or business venture, and hence no restrictions will be thrown around the right of the member to change his certificate and beneficiaries if he so desires. *Quinn* v. *Supreme Council*, *ante*, p. 80; *Sofge* v. *Supreme Lodge Knights of Honor*, 98 Tenn., 446.

The laws, articles of association, and certificates of membership of the order determine the rights of the members, and these laws, articles, and provisions of membership will be respected and enforced by the Courts. *Masonic Aid Assn.* v. *Jones*, 35 Am. St. Rep., 810; *Chartrand* v. *Bruce*, 25 *Ib.*, 241; *Bankers' Assn.* v. *Stapp*, 19 *Ib.*, 781; *Otto* v. *Tailors' Union*, 7 *Ib.*, 161; *Sabin* v. *Finney*, 30 *Ib.*, 681; Niblack on Mutual Ben. Socs., Sec. 166; May on Ins., Sec. 552; Bliss on Ins., Sec. 426; *Mutual Assn.* v. *Montgomery*, 14 Am. St. Rep., 519; *Morton* v. *Stablings*, 9 *Ib.*, 621.

The vital point and determining facts as to the rights of the holder and beneficiary are to be found in the laws of the order, by virtue of which the certificate of a member is within his power, control, and disposition so long as he lives, and no interest does or can vest in a beneficiary so as to defeat this right. *Catholic Knights* v. *Kuhn*, 91 Tenn., 241; *Handwerker* v. *Diermeyer*, 96 *Ib.*, 619; *Sofge* v. *Supreme Lodge Knights of Honor*, 98 Tenn., 446;

*Fidelity Mutual Life Assn.* v. *Winn*, 96 Tenn., 224. The beneficiary, during the life of the member, can have · no more than a mere expectancy, resting entirely upon the volition of the member, and this cannot, during the. member's life, rise to the dignity of a vested property right.

It is no more than the mere expectancy of a legatee or devisee, which, although it may be recognized by one will, may be defeated and extinguished by the execution of a subsequent will. The final power of disposition rests in the testator or member so long as he lives. The laws and regulations of the order enter into and become a part of every certificate issued to a member. Nor can it alter the rule that the expectant beneficiary has paid assessments or incurred expense, upon the faith of the provisions in his behalf, in a certificate which is afterwards canceled and changed. What the rights of such expectant, beneficiary may be against the member personally, growing out of such payments made and expenses incurred, we need not consider, as that question is not before us. But under the prevailing rule, as laid down and recognized by the current of authority and by our own cases, the member's right to dispose of the insurance exists, notwithstanding the beneficiary originally named has paid assessments or incurred expense. *Fisk* v. *Equitable Aid Union*, 11 Atl. Rep., 84; *Byrus* v. *Casey*, 70 Tex., 247; *Masonic Ben. Asso.* v. *Bunch*, 109 Mo., 560; 3 Am. & Eng. Enc. L., 2d Ed., 992,

note 3; *Quinn* v. *Supreme Council,* 41 S. W. Rep., 343.

But it is insisted that if all this be conceded, there is still an equity existing between the brother and sister, arising out of their agreement, which, while it cannot be enforced against the order, and contrary to the terms of the certificate, still should be recognized as between the brother and sister, and enforced against the proceeds, after they have been paid into Court by the order. In other words, the order having paid the fund into Court to be distributed as the Court may deem proper, and thus discharged its liability under the terms of the certificate, the Court will distribute the fund between the son and daughter, according to their agreement, and the terms of the second certificate; and without regard to the terms of the last certificate, which was taken out without the son's consent or knowledge.

It is not intended to hold that a case may not be presented that will call for such action, and where the equities of the parties *inter sese* may not be adjusted in the proceeds, without regard to the terms of the certificate under which the money is paid into Court. But under the findings of the Court of Chancery Appeals, such a case is not presented in this controversy. That Court finds that the son was unable to carry out his agreement to maintain his father, and that he abandoned the attempt not from a desire so to do, but from necessity. It finds, also, that the sister attempted to

exercise no improper influence over the father, and that he made the change in his certificate of his own volition, and she was guilty of no fraud in relation to it, and that the father comprehended the nature and purport of his action in changing the certificate. This state of facts does not raise any equity upon the part of the brother to have the fund distributed upon any different basis, or in any manner different from that provided in the final certificate.

The decree of the Court of Chancery Appeals is affirmed, and the cause is remanded as directed by that Court.