[S. F. No. 8642. In Bank.—July 26, 1920.]

CECILE B. ROY, Appellant, v. ROSA L. POS et al., Respondents.

[1] CONTRACTS — SPECIFIC PERFORMANCE — PERSONAL SERVICES. — Contracts for personal services where the full performance rests upon the personal will of the contracting party will not be specifically enforced against him.

[2] ID.—LACK OF FULL PERFORMANCE—EFFECT OF.—Contracts for personal services will not be enforced where the plaintiff is the one who has contracted to render the services and there has not been full performance on his part, since mutuality in the equitable remedy is lacking.

[3] ID. — AGREEMENT TO DEVISE PROPERTY — CARE AND SUPPORT OF OWNER—LACK OF SUBSTANTIAL PERFORMANCE.—Substantial performance of a written agreement to devise property in consideration of furnishing the owner with care and support for life is not shown where the owner lived about one year and a half after the agreement and the services covered only the first six months of the period.

3. Contract to make will as enforceable, notes, Ann. Cas. 1914A, 399; Ann. Cas. 1918A, 1191.

[4] ID.—MATERIALITY OF LENGTH OF SERVICES.—While the length of the life of the promisor after the making of an agreement to devise property in consideration of support is immaterial, providing the agreement was fair in its inception, nevertheless the proportion of the remaining lifetime during which the services were rendered is a material factor in determining whether or not there has been a substantial performance of the agreement.

[5] ID.—WILLINGNESS TO PERFORM—PREVENTION BY PROMISOR—EFFECT OF.—A written agreement to devise property in consideration of furnishing the owner with support for life will not be specifically enforced where the services covered only about one-third of the remainder of the lifetime of the owner, although the plaintiff was at all times ready, able, and willing to fully perform, but prevented by the owner, in the absence of any showing that plaintiff in reliance upon the agreement so altered her position before breach that to deny specific performance would operate as a fraud upon her.

[6] ID.—MEASURE OF DAMAGES.—Where a creditor under a written agreement to devise property in consideration of support for life does not sue in *quantum meruit,* but waits until a final breach of the contract and sues for damages, the measure of damages is the value of the property and not the value of the services rendered.

[7] ID.—BREACH OF AGREEMENT TO DEVISE PROPERTY—EXECUTION OF MORTGAGE—ALLOWANCE IN DETERMINATION OF DAMAGES.—Where an owner of real property who has agreed in writing to devise the property to another in consideration of care and support executes a mortgage on the property to a third person in consideration of care and support by such third person, and the services of such third person were not so totally inadequate a consideration as to amount to fraud, the mortgage is a valid charge against the property, and should be deducted from its value in ascertaining the damages for the breach of the first mentioned agreement.

[8] ID.—SETTING ASIDE OF MORTGAGE—RELIEF—PLEADING—INSUFFICIENCY OF COMPLAINT.—In an action to enforce a written agreement to devise property, the plaintiff is not entitled to a decree setting aside a mortgage on the property executed by the owner in breach of the agreement, where no cause of action for such relief is separately stated.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

6. Measure of damages for breach of contract to make will, note, Ann. Cas. 1918A, 854.

P. A. Bergerot and A. P. Dessouslavy for Appellant.

W. W. Sanderson for Respondents.

LENNON, J.—The plaintiff in this action sought to enforce a written agreement to devise property. The appeal is from a judgment in favor of defendants, entered upon the failure of the plaintiff to amend her complaint within the time granted for that purpose by an order sustaining the demurrers of the defendants.

The facts alleged by the complaint are substantially these: In October, 1914, Constance Roy was a widow about eighty-one years of age, having no living brother, sister, or parent, and without child or other issue; the only person in the United States in any way related to her was the plaintiff, who was the widow of a deceased stepson. Said Constance Roy had lived in the state of California for over forty years. On and prior to the date above mentioned she lived with strangers, having no home or residence of her own. She was the owner of real property of the approximate value of eight thousand dollars and of personal property amounting to about one thousand seven hundred dollars and consisting largely of moneys in bank. Being desirous of making her home with plaintiff, who, with her mother, lived in San Francisco and supported herself by her own efforts, Constance Roy "solicited and importuned" plaintiff to enter into a written agreement, made and dated October 24, 1914, whereby plaintiff, as the party of the second part, covenanted "to maintain, support, care for the party of the first part [Constance Roy], and to furnish to and provide for her suitable board, lodging, clothing, medical attention and all other necessaries of life, in a manner in keeping with the first party's present means and situation in life, from the date of this agreement, for and during the natural lifetime of the party of the first part [Constance Roy]." In consideration of this covenant, Constance Roy, as the party of the first part, agreed as follows: "To make and execute her last will and testament in due, proper and legal form, whereby the party of the first part shall give, devise and bequeath unto the party of the second part, the whole of the estate now owned by her or belonging to her, real or personal, wheresoever situate, without conditions or restrictions of any kind whatsoever, and to

appoint in said will the party of the second part, as her executrix without bonds. The party of the first part hereby further agrees not to revoke said will or any of its provisions or to change or modify the same, in any respect without the written consent of the party of the second part first had and obtained." The agreement further provided that plaintiff was thereupon and thereafter entitled to the use and possession of all of Constance Roy's property and the income thereof, but was to "assume, pay and discharge for the account of the party of the first part [Constance Roy], all charges, taxes, assessments, insurance premiums and all costs and expenses of keeping any and all of the property of the party of the first part in good and tenantable condition and repair. . . . " Constance Roy, however, by further provisions of the agreement, reserved the right to "rescind this contract and revoke said will or any of its or their provisions . . . upon a substantial violation" thereof by the plaintiff, who, upon such rescission, so the agreement provided, should be entitled to the reasonable value of the services, etc., rendered Constance Roy. The agreement further provided that it was "conclusively admitted and established as a fact by the party of the first part that the damages which shall result to the party of the second part upon a violation of the terms of this agreement, or by a revocation of said will, or any part thereof by the party of the first part, without cause or without the written consent of the party of the second part, shall not be capable of pecuniary compensation and that in consequence, the party of the second part shall, in said event, be entitled to relief in equity upon the death of the party of the first part, and the estate of the party of the first part shall thereupon be impressed with a trust in favor of the party of the second part to the extent of securing to her, all and singular, all benefits contemplated by this agreement." The agreement was recorded October 26, 1914, and thereupon Constance Roy went to live with plaintiff and executed her will and a power of attorney to plaintiff pursuant to the terms of the agreement.

About April 22, 1915, Constance Roy, against the will and without the consent of the plaintiff, left plaintiff's home and refused to live with or be cared for by plaintiff, although plaintiff at all times since the execution of the agree-

ment and until the death of Constance Roy was ready, able, and willing to perform all the terms of the agreement and offered so to do. About April 22, 1915, Constance Roy gave to defendant, Rosa L. Pos, without consideration, the sum of about one thousand dollars, which was part of the money owned by Constance Roy at the date of her agreement with plaintiff; on April 29, 1915, Constance Roy revoked the power of attorney to plaintiff, and since said date plaintiff has been unable to collect any of the rentals of said real property, which have been received by defendant Rosa L. Pos, who gave no consideration therefor; defendants at all times subsequent to March 1, 1915, had notice and actual knowledge of the provisions of plaintiff's agreement. On June 25, 1915, Constance Roy executed to defendant Rosa L. Pos a mortgage on her real property, which purported to secure the payment of the sum of three thousand dollars, but this mortgage was executed with intent to defraud plaintiff, and the only consideration therefor, if any, was the care and support of Constance Roy by defendant Rosa L. Pos. On March 26, 1916, ten days before her death, Constance Roy made another will, leaving her entire estate to defendant Rosa L. Pos, and appointing the latter's husband, defendant Bernard Pos, executor. This will was admitted to probate and administration is pending.

The complaint prays for a decree to the effect that all of the property owned by said Constance Roy on October 24, 1914, or at the date of her death is held by defendants in trust for plaintiff and that plaintiff is the owner thereof, subject only to administration; that defendants be directed to convey all of said property to plaintiff together with the rents from May 15, 1915; that the mortgage to defendant Rosa L. Pos be decreed fraudulent and void as to plaintiff; and that defendant Bernard Pos, as the executor of the last will of Constance Roy, deceased, be enjoined and restrained from delivering to Rosa L. Pos any portion of the property belonging to said estate or the rents, issues, and profits thereof, and be directed to deliver said property to plaintiff.

It is earnestly urged by counsel for plaintiff that the cases which have heretofore arisen in this state for the specific performance of agreements to devise interests in land furnish no tests for the solution of the problem here

presented. In this behalf it is argued that the agreements sued upon in the former cases were parol and therefore *prima facie* within the statute of frauds (Browne on Statute of Frauds, sec. 263), and that the court in those cases directed the discussion merely to the nature of the part performance necessary to relieve the contract from the operation of the statute, and that, in this connection, the tests of irremediable change of position and the rendition of services incapable of pecuniary estimation were the controlling and determining factors of the decision in each instance. Because of this, it is insisted that the cases referred to have no application to the case at bar, where the agreement is not within the statute of frauds. While there is probably no case in this state for the specific performance of a contract to make a will which is directly in point with the pleaded facts of the instant case, nevertheless the principle which must control in the decision of the case now before the court is one which has long been established in this state in actions for the specific performance of contracts for the conveyance of real property.

[1] "It is a familiar rule that contracts for personal services, where the full performance rests upon the personal will of the contracting party, will not be specifically enforced against him. [2] It is also generally true that they will not be enforced where the plaintiff is the one who has contracted to render the services and there has been no full performance on his part, since mutuality in the equitable remedy is then lacking." (5 Pomeroy's Equity Jurisprudence, sec. 2181.) That this is the law in California is evidenced by section 3386 and section 3390, subdivision 1, of the Civil Code. It is apparent from the complaint that the plaintiff in this case has not in fact fully performed the services agreed upon. [3] Neither do the services alleged to have been actually rendered by plaintiff amount to substantial performance on her part, for it appears from the complaint that Constance Roy lived about a year and a half after the agreement was made and plaintiff's services covered only the first six months of this period. [4] While the length of life of the promisor after the making of an agreement such as the one in suit here is immaterial, providing the agreement was fair in its inception (*Howe* v. *Watson*, 179 Mass. 30, [60 N. E. 415]), never-

theless it is a self-evident proposition that the proportion
of the remaining lifetime during which the services were
rendered is a material factor in determining whether or
not there has been a substantial performance of the agree-
ment. Counsel for plaintiff, however, advance the theory
that, since plaintiff was able and willing and offered to per-
form, but was prevented from fully performing, by the
decedent herself, want of performance is excused, and plain-
tiff's acts were tantamount to full performance. (Secs.
1511, 1512, Civ. Code.) In support of this contention
counsel cite the case of *Alexander* v. *Lewes*, 104 Wash. 32,
[175 Pac. 572]. In that action, although the personal ser-
vices had not been fully performed by plaintiff, a written
agreement similar to the one in the instant case was speci-
fically enforced upon the theory that "one who is willing
to act upon the contract, but who is prevented by the volun-
tary repudiation of the other party, is in the same legal
position as one who has substantially complied before repu-
diation, goes without saying." **[5]** Whatever may be the
law in other jurisdictions, the rule in California was defi-
nitely defined in the early case of *Cooper* v. *Pena*, 21 Cal.
404, and since then consistently adhered to in this state. In
the case of *Moore* v. *Tuohy*, 142 Cal. 342, [75 Pac. 896],
a suit for the specific performance of an agreement to con-
vey land in return for personal services, this court said:
"It seems to be the theory on the part of the plaintiff that
because the defendant failed in his action to rescind the con-
tract in question, and as he refuses to permit the plaintiff
to proceed thereunder, and practically has repudiated the
contract, that therefore plaintiff has a right to have said
contract specifically performed. This, however, does not fol-
low. One party to a contract may refuse to carry it out,
and thereby cause damage to the other party; still the na-
ture of the contract and the conditions may be such that
the contract cannot be specifically enforced. . . . The de-
fendant, within less than a month, having repudiated
the contract, and refused to carry it out on his part, as
alleged, may have caused the plaintiff damages, as was
stated in the original complaint herein filed, and for which
he may have a right of action. But an action for specific
performance cannot be maintained unless the plaintiff has
performed or can be compelled to perform on his part."

(*Wakeham* v. *Barker,* 82 Cal. 46, 49, [22 Pac. 1131]; *Pacific etc. Ry. Co.* v. *Campbell-Johnston,* 153 Cal. 106, [94 Pac. 623]; Civ. Code, sec. 3392.) While the agreements in the cases cited were for conveyances *inter vivos,* the rule therein adopted is not, for that reason, inapplicable to the case at bar. Plaintiff could not, during the lifetime of Constance Roy, have been compelled to perform, nor could Constance Roy have been compelled to accept plaintiff's performance. Had plaintiff actually performed the services called for by the contract up to the time of the death of Constance Roy, she would probably now be in a position to ask specific performance.

If, on the other hand, plaintiff had so altered her position before the breach of the agreement that to deny specific performance would operate as a fraud upon her, equity would probably regard her part performance as a substantial performance and grant the relief prayed for. While the excessive weight and inordinately large appetite of Constance Roy may have rendered her care "costly, burdensome, and wearisome," still it does not appear that plaintiff altered her position even to the extent of changing her residence or giving up her position in life in order to care for Constance Roy; nor does it appear that plaintiff, in reliance upon the agreement, expended any considerable amount of labor or money of her own upon the property agreed to be devised to her. The allegations of the complaint do not disclose any injustice to plaintiff such as amounts to a fraud within the purview of equity, and nothing was undertaken or done by plaintiff pursuant to the provisions of the agreement in suit for which she cannot be adequately compensated in an action for damages.

We turn now to a consideration of the claim of plaintiff that a judgment in an action at law for damages would be unavailing for the reason that "the real estate—virtually the sole fund for the payment of such judgment—would be subject to extinction by a foreclosure of the mortgage." This necessitates a consideration of the amount of damages to which plaintiff would be entitled in an action at law for damages. [6] Where a creditor under a written contract of the nature of that now in suit does not sue in *quantum meruit,* but waits until a final breach of the contract and sues for damages, the measure of damages is the value of

the property agreed to be devised or bequeathed, and not the value of the services rendered. (*Morrison* v. *Land*, 169 Cal. 580, 590, [147 Pac. 259]; *Noyes* v. *Noyes*, 224 Mass. 125, [112 N. E. 850]; *Dilger* v. *McQuade's Estate*, 158 Wis. 328, [148 N. W. 1085]; *Day* v. *Washburn*, 76 N. H. 203, [81 Atl. 474]; 40 Cyc. 1073.) Section 1512 of the Civil Code provides: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." We are proceeding upon the assumption that plaintiff is able to prove the allegations of her complaint and that performance on her part was prevented solely by the act of decedent. From what has been said it is clear that, in an action at law for damages, the measure of damages to which plaintiff would be entitled would include the value of the property agreed to be bequeathed, subject to administration. From this amount, in the instant case, in addition to the debts and expenses of administration, there must also be deducted the reasonable cost of caring for and maintaining the deceased and the reasonable expenditures upon her property from the time of the breach of the agreement, unless, of course, these expenses have been paid from the property of deceased or have been charged as debts against the estate, as well as the amount which plaintiff earned, or could have earned, by devoting her services to others than the decedent.

If, therefore, the mortgage to defendant Rosa L. Pos is a valid charge against the estate, it must be deducted from the value of the estate in ascertaining the amount of damages to which plaintiff is entitled, and plaintiff cannot be heard to complain. On the other hand, while decedent retained the ownership of the property during her lifetime, her right to the control of the property was subject to the qualification that any disposition of the property to persons with knowledge of plaintiff's agreement and for the sole purpose of defeating the benefits to be derived by plaintiff from the agreement would be "a fraud in law, or a constructive fraud upon the agreement." (*Rogers* v. *Schlotterback*, 167 Cal. 35, 47, [138 Pac. 728, 733]; *Van Duyne* v. *Vreeland*, 12 N. J. Eq. 142.) If such is the case here, plaintiff does not thereby become entitled to specific performance of her agreement, but she may have the right to have the mortgage

set aside. The complaint alleges that the mortgage was executed to defendant Rosa L. Pos, defendants having at the time full knowledge and notice of plaintiff's agreement, and neither Constance Roy nor her estate has ever received the three thousand dollars or any money or property whatever in respect of said mortgage; that *the only consideration for said mortgage, if any existed at all,* was the care and support of said Constance Roy by defendant Rosa L. Pos; that the mortgage was executed in pursuance of the plan and agreement between the parties of evading and defeating the operation of plaintiff's agreement with said Constance Roy and with the intention to defraud plaintiff, and in the attempt to withdraw and remove the real property from the effect and operation of plaintiff's agreement. **[7]** If the support of Constance Roy was the consideration for the mortgage and such support was not so totally inadequate a consideration as to amount to fraud, the mortgage is a valid charge against the estate. Even were the allegations of the complaint upon this phase of the case sufficient in themselves to state a cause of action for setting aside the mortgage, still the fact remains that such a cause of action would necessarily be separate and distinct from the action for specific performance and it was not separately stated in this case. **[8]** Plaintiff having failed to amend in this particular, the complaint cannot, as it stands, be said to state a cause of action for the setting aside of the mortgage, nor can it be held that the complaint was primarily intended to or did do anything more than attempt to state a cause of action for specific performance. Inasmuch as plaintiff has been held not to be entitled to specific performance, she cannot be held to be entitled, under the pleadings presented upon this appeal, to a decree setting aside the mortgage. (*Sharp* v. *Miller,* 54 Cal. 329.)

The demurrers were properly sustained and the judgment is therefore affirmed.

Olney, J., Shaw, J., Lawlor, J., Angellotti, C. J., and Wilbur, J., concurred.

Rehearing denied.

All the Justices concurred.