# CATE v. POPEJOY.

Eastern Section. November 2, 1935.

Petition for Certiorari denied by Supreme Court, May 2, 1936.

D. S. Beeler, of Rutledge, for plaintiff.
Ellis & Hodges, of Rutledge, for defendant.

McAMIS. J. This action was instituted to recover the premiums paid by complainant upon a life insurance policy or benefit certificate

upon the life of her father, the defendant N. Popejoy, in which complainant was named as beneficiary. The bill alleges that about the year 1923 an agreement was entered into between defendant N. Popejoy and complainant and her mother to the effect that defendant would become insured in the Amra Grotto, a fraternal benefit association, and that complainant and her mother, in consideration of the payment of premiums, would be named as beneficiaries. The predicate of liability as laid in the bill is that after complainant and her now deceased mother had paid the premiums for many years under said agreement, defendant, the insured, changed the beneficiary, naming another person.

The chancellor decreed a recovery in complainant's favor for only a portion of the amount alleged to have been paid by complainant, and both parties have appealed, the complainant from the action of the chancellor in not allowing the full amount sued for, and defendant from the action of the chancellor in allowing recovery in any amount.

It appears, without dispute, that defendant did become a member of the Amra Grotto in 1923 and was insured by one of its certificates of life insurance. Complainant and her mother were named as beneficiaries. There is no proof to refute complainant's testimony that until her mother died on May 7, 1929, complainant and her mother paid the premiums in equal proportions. After the death of Mrs. Popejoy complainant was named as beneficiary, and the weight of the proof supports the chancellor's holding that complainant continued to pay the premiums until about the time of the change of beneficiary to a third party.

On December 16, 1931, the members of Amra Grotto were insured by a group policy in the Gem City Life Insurance Company, and we infer from the record that this plan was designed to operate as a substitution for the assessment plan theretofore in operation among the members. The group certificate named complainant as beneficiary and her son as alternate beneficiary, and the premiums on said certificate were paid by complainant as she had previously done under the assessment plan. However, the Gem City Life Insurance Company became insolvent and passed into the hands of a receiver on May 9, 1933.

Evidently for the purpose of determining upon the course of action to be pursued as a result of the insolvency of the Gem City Life Insurance Company, a meeting of the membership of the Amra Grotto was called and held on May 23, 1933. At that meeting it was decided to "reorganize" the Widows and Orphans Fund, and from the use of the word "reorganize" we infer that it was decided to merely reinstate the assessment plan of insurance as it existed prior to the taking over of the risk by the Gem City Life Insurance Company. The secretary of the Amra Grotto testified that the new

insurance to be afforded by the reorganization of the Widows and Orphans Fund was not a continuation of the Gem City policy or the assessment plan in existence at the time the Gem City policy was issued, but we think this was merely a conclusion on his part and that the chancellor correctly held that it was in fact a continuation of the plan of insurance previously in existence. At any rate, it appears that the parties to this suit so regarded it for defendant, having learned of the insolvency of the Gem City Company, asked complainant what she intended to do about the matter, and as soon as the reorganization of the assessment plan was completed complainant began the payment of calls as she had previously done.

The chancellor granted complainant a recovery only for premiums paid prior to May 23, 1933, and denied recovery for premiums paid by complainant between that date and the date the beneficiary was changed, upon the theory that, while there was a contract between complainant and defendant with reference to the payment of premiums prior to May 23, 1933, there was no such contract thereafter, and that subsequent payments of premiums were voluntary and could not be recovered. We cannot agree with this holding of the learned chancellor, for we think there was at least an implied contract to continue, under the reorganization plan, the previous arrangement. The parties so recognized it and acted upon it.

Defendant does not effectually deny that complainant paid premiums under the agreement as alleged in the bill, but relies principally upon the right reserved under the by-law of the Amra Grotto for members to change the beneficiary. In effect he admits the change of beneficiary and defends upon the ground that complainant had no vested rights which were violated by the exercise of the right reserved to him to change the beneficiary at will. The question presented, therefore, is whether complainant can recover under the facts stated, and if so, what is the measure of recovery.

It is well settled in Tennessee, in line with the generally accepted view, that where the right to change the beneficiary is reserved, and in the absence of an agreement, for a consideration paid, not to change the beneficiary, the beneficiary originally named acquires no vested interest in the insurance, but that he has a mere expectancy, depending alone upon the will and pleasure of the insured. Catholic Knights v. Kuhn, 91 Tenn., 214, 18 S. W., 385; Simms v. Randall, 117 Tenn., 543, 96 S. W., 971; Littleton v. Sain, 126 Tenn., 461, 150 S. W., 423, 41 L. R. A. (N. S.), 1118.

However, in Allen v. Cunningham, 143 Tenn., 12, 223 S. W., 450, the court sustained the right of one who paid premiums upon a policy of life insurance upon the life of another to an equitable lien on the proceeds of the insurance for the amount paid in assessments, though the person paying the premiums could not recover in an action upon the policy for lack of an insurable interest.

The facts here presented are similar to those before the court in the case of Fischer v. Fischer, 99 Tenn., 629, 42 S. W., 448, 450. In that case the insured made an agreement with his son that if the son would furnish the father a home and maintenance and pay half his dues to the order, the son should have half the proceeds of the insurance at the death of the father. Prior to his death the father surrendered the certificate, taking a new one by which the son's beneficial interest was substantially reduced.

After stating the general rule that the beneficiary has no vested rights in the policy during the life of the insured who has reserved the right to change the beneficiary, the court said:

"Nor can it alter the rule that the expectant beneficiary has paid assessments or incurred expense upon the faith of the provisions in his behalf in a certificate which is afterwards canceled and changed. What the rights of such expectant beneficiary may be against the member personally, growing out of such payments made and expenses incurred, we need not consider as that question is not before us. But under the prevailing rule as laid down and recognized by the current of authority and by our own cases, the member's right to dispose of the insurance exists, notwithstanding the beneficiary originally named has paid assessments or incurred expense."

As the opinion points out, the court did not consider the rights of the original beneficiary in such a case to sue the insured in a personal action and recover damages for breach of the agreement.

Under the principles announced in the foregoing cases, one who has paid premiums under an agreement, express or implied, that he will be named as beneficiary, would undoubtedly be entitled to an equitable lien upon the proceeds of the insurance. However, we do not think the enforcement of such lien would be the exclusive remedy of the aggrieved party, but that he would have the right of election whether to assert an equitable lien or treat the contract as breached when the beneficiary is changed and sue in damages for the breach.

Such a right of action is similar to an action for breach of an agreement to devise property. The validity of such agreements is universally recognized, and it is said the promisee may sue for damages for breach of the agreement or, in some cases, seek a remedy in the nature of specific performance (68 C. J., 589), and an action for damages may be instituted during the life of the promisor on his repudiation of the agreement by denying its existence or by disposing of the property to be willed. 58 C. J., 1264.

We are, therefore, constrained to hold that complainant is entitled to a recovery in the present action and there remains only the question of the measure of recovery.

Continuing the analogy to an action for breach of an agreement to make a devise of property, it is generally held that the measure

of damages in such cases is what the promisee has lost by the failure of the promisor to comply with his agreement, which is, ordinarily, the value of the property agreed to be bequeathed or devised less proper deductions, and not the value of the services rendered or other consideration furnished by the promisee. Williams v. Buntin, 4 Tenn. App., 340; 68 C. J., 601, sec. 222; Gordon et al. v. Spellman, 145 Ga., 682, 89 S. E., 749, Ann. Cas., 1918A, 852.

Thus, where the promise was to leave all of the promisor's property in return for support for life, and while the promisee remained willing to perform, the promisor refused to accept support from the promisee, it was held that there should be deducted from the damages, based on the value of the property, the reasonable cost of caring for and maintaining deceased. Roy v. Pos, 183 Cal., 359, 191 P., 542.

Upon like principles it is held that the promisee may not recover more than the value of the property agreed to be devised. Hudson v. Hudson, 87 Ga., 678, 13 S. E., 583, 27 Am. St. Rep., 270, Ann. Cas., 1918A, page 856.

It seems obvious that the measure of recovery in this case is not the amount of premiums paid, just as the value of services rendered is not the measure of damages for breach of an agreement to devise specific property in consideration for the support and maintenance of the testator. Roy v. Pos, supra.

The fallacy and injustice of allowing recovery of premiums paid as the measure of recovery is well illustrated by the case at bar. Complainant sued for approximately $600, while the proof shows there was in force at the time suit was instituted only about $472 in insurance benefits. If we should adopt the amount of premiums paid as the correct measure of recovery and complainant should establish payment of $600 in premiums, she would be entitled to recover as damages for breach of contract approximately $138 in excess of the amount she would have received in event of the death of defendant. To illustrate further, suppose complainant had paid $1000 in premiums over a long period of years but that the amount of the insurance was only $500. It could hardly be said that she would be entitled to recover, under any conceivable theory, more than $500. We are of opinion that the measure of damages is the value of the policy to complainant at the time of the repudiation of the agreement, i. e., the amount of insurance then in force, less the assessments to be paid during defendant's then expectancy of life, to be arrived at by the use of mortality tables generally accepted as reliable authority in determining the expectancy of life.

If counsel are unable to agree upon the amount of the recovery, measured by this ruling, the cause will be remanded and an order of reference directed to determine (1) the normal expectancy of defendant on November 24, 1934, (2) the normal assessments rea-

sonably to be expected during the period of expectancy, based upon the past and present experience of the association, and (3) the amount of insurance benefits to which complainant would have been entitled in event insured had died on November 24, 1934. Decree will be rendered for the amount fixed under the third heading of the report less the amount fixed under the second.

By appropriate assignment of error, it is insisted the court erred in not dismissing the attachment levied upon defendant's property. It is said that there is no proof to support the charge made in the bill that defendant was about to fraudulently dispose of his property. There was no plea in abatement filed traversing the grounds alleged for the issuance of the attachment, and for that reason the chancellor sustained the attachment. It is not sufficient merely to put in issue the grounds alleged for an attachment by answer and the filing of an answer is a waiver of matters which go in abatement of the writ. Foster v. Hall, 4 Humph., 346. The chancellor, therefore, correctly sustained the attachment, and the assignment directed to his action in so doing must be overruled.

The costs of appeal will be equally divided between the parties. Costs below will be taxed to defendant. As directed above, in the absence of an agreement of counsel, decree will be entered here in accordance with this opinion and the cause remanded for a reference.