[Civ. No. 3451.   Fourth Dist.   Jan. 29, 1947.]

WILLIAM VAN CORE, Appellant, v. ANDREW J. BODNER, Respondent.

Waldo Willhoft for Appellant.

R. Bruce Findlay for Respondent.

GRIFFIN, J.—Plaintiff brought this simple action to quiet title against defendant. Defendant answered, and by way of cross-complaint set forth his claimed interest in the property and also sought the recovery of $700 for funds claimed to have been advanced by him to plaintiff.

Plaintiff William Van Core, aged 68, and his wife, Margaret R. Van Core, aged 63 in October, 1931, acquired a 2½-acre tract of land in Fontana on that date. It was held in joint tenancy and was improved with a small dwelling, chicken equipment, and a few fruit trees. Within a year from the date of purchase, defendant Andrew J. Bodner, hereinafter referred to as "Andy," aged 29, came to live with them. He was not well. He suffered some illness in one leg which required him to walk on crutches, and he had a spinal injury causing

him to wear a brace. He could do only light work. The Van Cores had no money or income and lived on relief. Andy had no income but did have an old Ford automobile and drove it about. He visited the Van Core home occasionally.

He testified that "they told me to move in and occupy that spare bedroom . . . it would save me wear and tear of the car (going home)." Van Cores provided him with oil and gas and upkeep. He further testified that "It was a sort of a pooling arrangement to keep . . . living expenses down"; that the Van Cores were expecting to receive some legacy through a New York estate . . . "The Descending Freeholders of the Blood, the Members of the Corporation of the Town of New Harlem," and that Mrs. Van Core's Bible class were financing the cost of the genealogy. Based upon the vision of a large inheritance, the Van Cores, in May, 1932, planned to travel extensively by automobile and had agreed to employ defendant at a regular chauffeur's salary to drive them about. This vision never materialized. Thereafter, it is claimed by defendant that Mrs. Van Core (who had been ill over a period of years and had considerable care given her by defendant), stated that "as long as this money is not going to materialize and I don't know how long I am going to live, we decided to sign this property over to you as long as we are not able to pay you otherwise"; that this was to be for his services "provided I would stay on and help them right on through," and provided also that I "continued to live." Mr. Van Core was not present at that conversation. He then testified that Mrs. Van Core did not say how they intended to turn the property over, whether by deed or will; that she said: "We want you to have this home after we are gone."

On January 22, 1940, Mrs. Van Core went to an attorney's office and instructed the attorney to draw a grant deed to the premises in favor of defendant. The pleadings set forth the grant deed as prepared, which was dated January 22, 1940, and was signed by both Mr. and Mrs. Van Core. It was deposited with a Mr. Skinner and was accompanied by a letter, signed by both grantors, reciting that "We hand you, herewith, grant deed executed by ourselves in favor of Andrew J. Bodner, dated this day, covering the property which we now own, situated on Colton Avenue, west of Bloomington, Calif. You are to hold this deed until after the death of both of us, after which event, you are to deliver the deed to Mr. Bodner, in consideration of various domestic and other types of services

and conveniences which he has done for us during our life-time."

Bodner had no knowledge of the execution of the deed or the letter accompanying it until a short time before this action was commenced. He continued to live at the Van Core home and care for Mrs. Van Core. He and Mr. Van Core did not get along very well. They had several physical and verbal altercations. On January 3, 1944, Mrs. Van Core died. Disagreements between Mr. Van Core and Andy continued. Each tried to lock the other out of the house. At the time of trial each was living in the house but they were not speaking to each other and each claimed title to the property. At the trial, Mr. Van Core claimed that he was unable to read and write. He testified that he did not remember signing any deed or letter purporting to deed the property to Andy in the event of his and his wife's death; that his wife dominated him in all business affairs; that nothing was ever said between them about deeding the property to Andy; and that his wife suggested at one time that they adopt Andy but he remarked "Nothing doing."

The attorney for Mrs. Van Core, who drew the grant deed, testified that Mr. Van Core was not with her in his office, although Mr. Van Core testified that he was; that Mrs. Van Core came to his office for the first time and stated that she wanted a deed prepared which was to be signed by her and her husband in favor of Andy and which deed was to be left with a third party to be delivered to him in the event of their death; that he told her that was not a safe practice and suggested making a will or creating a life estate for each in the property; that Mrs. Van Core objected to that and said: "We don't want Andy to have any interest in the property until we are dead"; that he then prepared the deed and letter and went to the Van Core home where Mr. and Mrs. Van Core signed them; that Andy was present, in the background; that he asked Mr. Van Core if he understood what it was all about and that before he could answer the question Mrs. Van Core stated: "Don't pay any attention to him, he doesn't know anything. . . . Don't discuss this with him; I take care of our business"; that he notarized the papers and left them with Mrs. Van Core; that Andy later came to him about the transaction and that he referred him to Mr. Skinner and that it was then that Andy learned, for the first time, that Mr. Skinner held a grant deed

and letter from the Van Cores pertaining to the disposition of the property; that Mr. Van Core also came to him and wanted the grant deed repudiated and canceled and also wanted to have the letter withdrawn; that such a notice of repudiation and rescission was served on Mr. Skinner and Andy. A decree was entered in court terminating the joint tenancy in favor of Mr. Van Core.

Plaintiff then commenced this action to quiet his title against defendant. Upon this evidence the trial court found generally that the grant deed was duly executed on January 22, 1940, for a valuable consideration, to wit "services theretofore rendered to and for" Mr. and Mrs. Van Core by the defendant; that said deed was made in accordance with "an agreement theretofore had between plaintiff and his said wife on the one hand and the defendant upon the other"; that Mrs. Van Core died on January 3, 1944, and that thereupon the said joint tenancy theretofore existing between plaintiff and his wife "terminated and that since said date the plaintiff has held and does now hold the title to said real property, subject to the provisions of the said grant deed theretofore executed to the defendant and subject to the provisions of said letter to Samuel R. Skinner . . .; that cross-complainant has continued to occupy said real property jointly with plaintiff"; and that as to cross-complainant's claim for the recovery of $700, it is found "that there is no evidence before this court by which it can be determined what are the proportionate amounts of said account to which the plaintiff and the defendant are entitled"; and concluded that "plaintiff is the owner of all of the property described in the complaint, *subject to the provision that the title thereto shall pass and vest in defendant upon the delivery to the defendant of the grant deed above mentioned upon the death of plaintiff* . . .; that the plaintiff is entitled to the present possession of all of said real property," and rendered judgment accordingly. Plaintiff appeals from the portion of the judgment italicized.

It is argued (1) that the grant deed and letter were of testamentary character and intent and therefore of no legal effect; (2) that the finding of the court that there was an agreement to deed the property, for *services rendered,* is contrary to the evidence; (3) that plaintiff had a legal right to revoke the deed deposited with a third person, and having exercised that right, the defendant was relegated to an action for damages, if he sustained any, by the act of revocation;

(4) that the agreement relied on by the defendant is not one which in law may be specifically enforced against the plaintiff.

An agreement to leave property by deed is invalid unless in writing (Civ. Code, § 1624; Code Civ. Proc., § 1973.) ▉ An oral agreement to leave property by deed, in compensation for services rendered, or to be rendered, is not enforceable, as such, but the remedy is one in *quantum meruit* for the value of the services rendered. (*De Mattos* v. *McGovern*, 25 Cal.App.2d 429 [77 P.2d 522].) See, also, *Zaring* v. *Brown*, 41 Cal.App.2d 227 [106 P.2d 224].

Defendant testified that so far as he knew, there was no written agreement between the Van Cores and himself that the property was to be deeded to him for the services performed or to be performed. The only writing was the deed and the letter accompanying it. These writings were not signed by defendant. The most that can be said from his testimony is that there was an oral agreement on the part of Mr. and Mrs. Van Core that they would see that the property was left to him, after their death, in consideration of defendant's oral agreement to render them personal service during their lifetime. Apparently, in contemplation of this oral agreement, Mr. and Mrs. Van Core placed a grant deed in the hands of a trustee, to be delivered to defendant, upon the fulfillment of his oral agreement to render his personal service to them. The trial court has found these suggested facts to be true under one of its several findings which we will set forth and further discuss.

▉ The main testimony in respect to the nature of the services to be performed and whether the property was to be given to him in consideration of his services to be performed or whether he had already performed them at the time of the signing of the grant deed and letter, comes from the lips of defendant. He testified, time and again, without any equivocation, that they were to sign the ''property over'' to him ''provided I would stay on and help them right on through'' and provided ''I continued to live. . . . In other words, the signing over of the property was contingent on . . . me surviving them. . . . So far as I knew, there was never any intent to give me any interest in the property until they both died . . .'';
that he had a verbal agreement with Mrs. Van Core that if he would continue to do ''this domestic work'' that she would ''leave me the property on her death''; that Mr. Van Core

was not present then, but he believed he knew "all about the facts because they talked it over among themselves."

In addition to his testimony he specifically alleges in his verified cross-complaint that in consideration for the agreement to transfer the property in question he "was to live with them and do certain housework, nursing and general utility work around their home and ranch *until such time as they, the said William Van Core and Margaret R. Van Core, should have passed away*" (Italics ours) ; that the agreement is still in full force and effect and that he "offers . . . complete performance of the same."

The trial court specifically found that these allegations were true. The evidence we have noticed supporting the incongruous and repugnant finding that the Van Cores "for a valuable consideration, to wit . . . services *theretofore* rendered to" them executed the grant deed, is the grant deed and the letter prepared by their attorney, which letter recites that the consideration was the "various domestic . . . services . . . which he *has done* for us during our lifetime." (Italics ours.) The uncontradicted testimony of the *defendant* supports only the finding that the consideration for the deed was domestic work he had done and was yet obligated to do during the lifetimes of both Mr. and Mrs. Van Core.

The trial court likewise found that Mr. Van Core repudiated the agreement and prevented Bodner from carrying it out, and that Bodner performed all services incumbent upon him to be done and that he stands ready, able and willing to carry out the same until the completion thereof.

█ The pleadings do not seek specific performance of the claimed agreement. If defendant could seek specific performance at all, he could not, under the claimed agreement, seek it until the death of Mr. Van Core. (Civ. Code, §§ 3386, 3388; *Cooper* v. *Pena,* 21 Cal. 403; *Moore* v. *Tuohy,* 142 Cal. 342 [75 P. 896]; *Wakeham* v. *Barker,* 82 Cal. 46 [22 P. 1131]; *Hayden* v. *Collins,* 1 Cal.App. 259, 265 [81 P. 1120]; *Roy* v. *Pos,* 183 Cal. 359, 366 [191 P. 542].)

If the defendant is seeking to claim title to the property under the grant deed and letter in evidence, it must be predicated upon the theory that the grantors intended, at the time of the making of the grant deed, to part with their present title to and ownership in the property but delivery of the deed to be postponed until after their death, which in effect would be the granting of title to defendant reserving a life

estate for themselves. The question then presented is whether or not the evidence would support this conclusion and whether or not the trial court has directly found on that question.

■ There is a rule of law that the question as to the intention of a grantor in delivering a deed to a third party is one of fact, unless the instructions are entirely in writing, when it becomes one of law; but when the written instruments do not purport to be all of the directions given, or the same are equivocal, i. e., having two or more significations, ambiguous, uncertain, or doubtful, or which admit of more than one interpretation, evidence of the circumstances attending the preparation of the deed and the acts and statements of the alleged grantor material to the question of delivery, during the entire period of escrow, is admissible. (*Manwell* v. *Board of Home Missions,* 122 Cal.App. 599 [10 P.2d 787]; 5 Cal.Jur. 10-Yr. Supp. (1944 Rev.) p. 171, § 78.)

Upon a casual reading of the letter accompanying the grant deed it might be so interpreted that the deed was to be delivered to defendant in consideration of services which he had already performed, and under such circumstances it might be concluded that the general rule applies that where there is evidence that a grantor delivered his deed to a third person with instructions to deliver it to the grantee after the grantor's death, without any other evidence of intention, it is sufficient to justify the inference that the grantor thereby intended to part with all right thereafter to control the deed. It has been repeatedly held that whether such inference is overcome by other proof involves the question of weighing the evidence, which is a matter within the exclusive province of the trial court, on which question specific findings should have been made. (*Wilcox* v. *Hardisty,* 60 Cal.App. 206 [212 P. 633].)

■ Upon a second reading of the instrument, however, and after reading the verified pleadings of the parties and the evidence offered in connection therewith, another and different interpretation may be placed on the wording of the written instruments which would be in accordance with the pleadings and evidence, i. e., that defendant was to receive title to the property only after he had rendered personal service to the Van Cores during their lifetimes. The instrument recites that the deed is delivered to Mr. Skinner but that delivery shall be delayed until the Van Cores' deaths in consideration of domestic services ''which he (Bodner)

has done for us *during our lifetime."* (Italics ours.) It does not recite that it was for services that had theretofore been rendered to them up to the time of the signing of the deed, but for services done during their lifetime. Considering the fact that the written instrument is therefore equivocal and admits of more than one interpretation, the trial court should take evidence on this question and directly find on the issue, whether the Van Cores, at the time they signed the grant deed, intended to part with their title and ownership in and to the property, as of that date, which would in effect reserve in themselves a life estate, or whether they intended that title and ownership was to remain vested in the Van Cores and to pass to defendant Bodner, after their death. ■ If it be the intention of the grantor, when he deposits a deed, that it shall only be delivered to the grantee by the depositary after the death of the grantor, and that title *is to vest only upon such delivery after his death,* then the deed is entirely inoperative as constituting an attempt by the grantor to make a testamentary disposition of his property. (*Williams v. Kidd,* 170 Cal. 631 [151 P.2d 1, Ann.Cas. 1916E 703].) Without specific findings on these issues, a determination of the correctness of the judgment is impossible and the judgment should be reversed for this purpose.

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.