[Civ. No. 13483. First Dist., Div. One. Nov. 6, 1947.]

S. M. SAN FILIPPO, as Administrator, etc., Appellant, v. JOE VITA, Respondent.

C. B. Wooster and Kirby & Pasquinelli for Appellant.

Rankin, Oneal, Luckhardt, Center & Hall for Respondent.

FINLEY, J. pro tem.—This is an appeal from a judgment quieting title in respondent Joe Vita to certain real property in the city of San Jose.

Joe Vita is the son and only child of Frank Vita, deceased. His mother was Frank's first wife, who died in February, 1933. The property in question was accumulated during this marriage, with the aid of Joe's earnings prior to his own marriage in 1930. Joe's age does not appear in the record.

In March of 1933, about a month after the death of Joe's mother, Frank requested G. F. Paull, who conducted a real estate business, to prepare deeds conveying the property in question to Joe. The deeds were executed by Frank, placed in an envelope and left in the office of Mr. Paull. On the envelope appeared the following instruction signed by Frank: "This envelope contains papers which are to be delivered to me on demand or in event of my death then to be delivered to my son Joseph C. Vita."

In September of the same year, 1933, Frank remarried. This second wife, Lucy, survived him. The date of Frank's death does not appear but Lucy testified that they had been married eleven years and two months. Some time after Frank's death the deeds were turned over to Joe. The trial court quieted his title to the property, thereby impliedly finding that Frank had made valid delivery, and the attack on this finding presents the only issue to be determined here.

Respondent maintains that "the original deposit of the deeds with Paull constituted a complete delivery." As a second line of defense, however, he argues that, assuming this to be not so, then Frank Vita "by a subsequent manifestation of his intention so to do did make a new, independent and complete delivery."

The circumstances surrounding delivery of the deeds to Paull in the first instance are shrouded in some obscurity. It appears that before his first wife died Frank Vita prepared similar deeds to those involved here, conveying the property to her, and placed them in escrow in an envelope containing the identical instructions as those with which we are here concerned, excepting, of course, that her name appeared as the deliveree rather than the name of Joe Vita. When Frank executed the deeds to Joe in Paull's office he produced this envelope and Paull or Mrs. Paull who was also in the office copied the instructions on the envelope containing the deeds to Joe. On the stand Paull could not say just what directions Frank gave in this connection, but it was at least assumed that this was what Frank wanted. Later, by affidavit which was made part of the record by stipulation, he testified that Frank brought in the old envelope and asked that the deeds to Joe be placed in a new envelope with the same kind of instructions thereon which were on the old envelope. Frank could neither read nor write English, but having withdrawn the deeds to his first wife he apparently understood the import of the language used and intended to create the same situation with regard to the deeds to Joe. In other words, he intended to retain control of them during his lifetime and that the title should not pass until his death.

The findings of the trial court are very general, and no special formal finding was made on this point. In his memorandum for judgment, however, Judge Del Mutolo states: "It is my opinion that the instructions given G. F. Paull were not sufficient to constitute absolute delivery."

Obviously, if Frank Vita's intention was that the envelope containing the deeds to Joe should bear the instruction as it actually appears, delivery in the first instance was not complete. ". . . the question as to the intention of a grantor in delivering a deed to a third party is one of fact, *unless* the instructions are entirely in writing, when it becomes one of law." (Emphasis added.) (*Van Core* v. *Bodner,* 77 Cal. App.2d 842, 849 [176 P.2d 784].) ■ As a matter of law, deposit of a deed with a third party, reserving in the grantor at all times the power to recall is no present delivery at all and no title is thereby transferred. (*Williams* v. *Kidd,* 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]; *Moore* v. *Trott,* 156 Cal. 354 [104 P. 578, 134 Am.St.Rep. 131].) ■ We must therefore agree with the trial court that there was no

valid delivery to Joe at the time Frank signed the instructions on the envelope, deposited the deeds therein, and left them with Paull.

The remaining point for decision is whether the subsequent conduct of Frank Vita with reference to these deeds constituted valid delivery at a later date. As stated above, Frank's first wife died in February, 1933. The deeds to Joe were executed and left with Paull in March, 1933. In September of the same year Frank married Lucy, who had property of her own, and two sons by a former marriage. By prenuptial oral agreement Frank and Lucy agreed that his property should belong to Joe and her property to her two sons. Thereafter, on various occasions and to several persons who testified, Frank declared that the property was "all Joe's"—"Everything is Joe's"—"It belongs to Joe" and that "Joe could collect the rent if he wanted to."

Joe testified that prior to Frank's marriage to Lucy he and his father had conversations relating to the property and that these continued over the period of the marriage and up until three months before Frank died. Following are excerpts from Joe's testimony: "Q. . . . Now, Joe, did you know that your father was going to get married? A. Yes. Q. Did he talk to you about it? A. That's right. Q. And did he talk to you about the property, and what— A. That's right. Q. Would happen to it in the event of his marriage? A. When he told me about it, he wanted to marry her, I don't know how they got together, but when he told me he was going to marry her, he made me understand what— Q. Just tell what he told you. A. Well, he says I didn't have to worry about the property, that it was all taken care of, and that if I wanted to, I could take care of all the rent myself. Q. . . . you mean right then? A. Right then, if I wanted to. . . . Q. What if anything, did he say to you about the ownership of the property? A. He said that they were all taken care of, and it was all mine, and if I wanted to, I could collect the rent right now, and I left him take care of the whole thing. . . . He just didn't care any more, he just threw up the sponge."

In the case of *Moore* v. *Trott, supra,* there were two appeals. The first, referred to above, is reported in 156 Cal. 354. It held that the delivery of the deeds in question by the grantor to a third person, with instructions to deliver them to the grantee only "in case of my not returning from

the . . . Hospital . . . where I am going for to have an operation'' was not an absolute delivery. On the second trial of the case, additional facts were presented, from which the court found (162 Cal. 268 [122 P. 462]) that the grantor had made absolute and unconditional delivery after his return from the hospital. The subsequent acts and conduct of the grantor, which were held sufficient in that case, are set forth in the court's decision on the second appeal. Substantially such acts and conduct consisted of statements made by the grantor concerning his real property; that he had ''deeded it'' and that (p. 274) ''the deeds would be delivered when he would not be here.'' He stated that he had left deeds to his real property so that there would not be any ''lawing over it after he had passed away'' and advised grantee that (p. 274) ''Mr. Tietzen would give her the deeds after he (Moore) passed in his checks.'' Such declarations were made by grantor after his return from the hospital. The third person who held the deeds in that case was never advised as to any change in the grantor's intent. In the course of its opinion, the court stated (p. 276): ''. . . it is to be remembered in this connection that the single question for determination is whether the evidence supports the court's finding of a delivery. Therefore, the proposition is not whether this evidence fairly conveys an inference that Moore in these declarations had in mind the delivery which he made to Tietzen, but it is 'Does the evidence support the inference which the court drew and embodied in its finding to the effect that the testator, subsequent to the Tietzen letter, expressed his intent and made a new, independent and complete delivery?' We think it cannot be said that such an inference is not permissible, and if it be permissible, it supports the finding of the court. It is true that Tietzen was not advised of the grantor's changed determination, but it is equally true that it was not necessary so to advise him, to effect a new and complete delivery. [Citing *Ruiz* v. *Dow*, 113 Cal. 490 [45 P. 867].]''

▪ The duties of a depositee of title papers are created and measured by the instructions of the depositor. By accepting the deposit and by acquiescence in the instructions the depositee undertakes to perform according to the terms thereof. There is a meeting of the minds and the birth of a contract. It is somewhat anomalous that a relationship so created by personal negotiation can be abrogated by subsequent

declarations made to others, including the grantee, even though they should come to the attention of the depositee. We are not aware of any other contract subject to amendment in this fashion. Supposing the depositor should make many and positive statements to others renouncing his right to recall the papers and then should appear and demand them of the depositee. Would the fact that such declarations had been made, whether brought to the attention of the depositee or not, relieve the latter of the duty of complying with the demand? Apparently it would, under the rule announced in the second *Moore* v. *Trott* case, *supra*, for the grantee in whom title has vested is, as against the grantor, certainly entitled to the muniments thereof. If the depositee is not so relieved of the obligation created under the instructions, then the depositor has made complete and unconditional delivery while still retaining dominion over the actual documents themselves, which cannot be the case. ▮ The explanation is that a title document is merely a conduit through which title passes; that after a deed is properly executed, passage of title to the property described therein becomes a matter of intent. If it can be satisfactorily demonstrated that the grantor then or at any time thereafter formed the positive and unconditional intent to part with title, thereupon title does pass and physical possession of, as distinguished from right of dominion over, the conduit becomes immaterial. It may even remain in possession of the grantor and never come into the hands of the grantee. (*Moore* v. *Trott, supra,* 162 Cal. 268, 275.)

▮ Whatever the situation, the rule of the second *Moore* v. *Trott* case, *supra*, does not, to say the least, lighten the burden of determining where title actually reposes in any analogous case. Obviously, one effect of it is to render easier the circumvention of probate. It is, however, a pronouncement laid down and followed by the Supreme Court and it must be followed here.

The trial court herein specifically predicating its decision on the rule laid down in the second *Moore* v. *Trott* case, *supra*, quieted title to the property in Joe Vita. This implies a specific finding of conduct indicating a change of intent after actual deposit of the deeds by Frank Vita. It amounts to an implied finding of a subsequent intent to renounce the right to recall the deeds and to make the delivery unconditional and complete. Since this finding is supported by evidence as substantial as that in the second *Moore* v. *Trott* case, *supra*, we

cannot quarrel with the inference drawn by the trial court from the evidence, and are bound by its finding.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1947. Spence, J., voted for a hearing.